**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bobbie L. BISHOP, Defendant-Appellant.**

**No. 75–1184.**

United States Court of Appeals,
Tenth Circuit.

April 13, 1976.

Daniel T. Smith, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Richard T. Wehrle, Denver, Colo., for defendant-appellant.

Before BREITENSTEIN, HILL and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Bobbie L. Bishop appeals from a jury conviction and sentence on charges of two count violations of Title 18, U.S.C.A. § 472,[1] i. e., passing a counterfeit $100.00 bill and possessing another counterfeit $100.00 bill.

A brief recital of the facts in the light most favorable to the Government in support of the verdict is in order. *United States v. Ramsdell*, 450 F.2d 130 (10th Cir. 1971); *United States v. Mecham*, 422 F.2d 838 (10th Cir. 1970). We do not retry the case on appeal. Our review shall consist of an outline of the facts in the worst possible manner insofar as Bishop is concerned, as fairly reflected by the record before us.

On October 6, 1974, at about 11:15 a.m., Bishop handed Clerk Deloris Ward of a Sears Department Store, Denver, Colorado, a counterfeit $100.00 bill for the purchase of a $59.00 coat. While Clerk Ward could not make a positive in-court identification of Bishop, she did recall that the person who passed the counterfeit bill was a black female of medium build, about five feet seven inches tall, whom she did see shortly thereafter that same day in the presence of a uniformed police officer at the cashier's desk of the store. Clerk Ward accepted the

---

1. Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

counterfeit $100.00 Federal Reserve Note and returned the change to Bishop following the sale. The note was delivered by Ward to one Leon Houston, the store's cashier, who in turn summoned Paul Mulqueen, then serving as the store's security officer. Houston suspected that the note was not genuine when he examined it and compared it to a couple of other bills in his cashier's drawer. About a half hour expired after Houston delivered the change to Ward and the $100.00 note to Mulqueen. Mulqueen's examination of the note led him to believe that it was not true. He then proceeded to the main floor of the store where Bishop was identified to him as the person who passed the note to Clerk Ward. He had already contacted the Denver Police Department and the Secret Service. Shortly thereafter, Officers Potter and Kier of the Denver Police Department arrived at the store. Mulqueen pointed Bishop out to them. Mulqueen returned to the cashier's office. Within a short time, Officers Potter, Kier and Bichler arrived at the cashier's cage, with Bishop in custody. Shortly thereafter, Secret Service Agent Thomas C. McDade arrived. He examined the $100.00 bill which Bishop had passed to Clerk Ward. He qualified as an expert on counterfeit detection, which he worked at as ". . . a daily routine, actually seven days a week." [R., Vol. II, p. 45]. He determined that the $100.00 bill was counterfeit. Officer Kier then proceeded to conduct a search of Bishop's purse. It contained another $100.00 bill which agent McDade examined and determined to be counterfeit, together with currency of between $275.00 to $300.00, and one valid $100.00 bill. The two counterfeit notes were admitted in evidence. The physical appearance of the two notes was distinctly different from each other and the genuine note. Bishop did not testify and she offered no evidence. At the conclusion of the Government's case, Bishop moved for dismissal of the charges on the grounds that: (1) there was no showing that she passed the $100.00 counterfeit bill to Clerk Ward; and (2) there was no showing that she was ever placed under arrest by the United States for counterfeiting.

On appeal, Bishop alleges Trial Court error in: (1) denying her motion for judgment of acquittal in that the evidence was insufficient to support conviction because (a) the evidence did not establish her identity with respect to Count I involving the counterfeit $100.00 bill passed to Clerk Ward, and (b) the evidence failed to establish that Bishop had knowledge that the bills were counterfeit or that she had intent to defraud; (2) denying her motion for mistrial, because certain statements of the prosecutor in closing argument were prejudicial; and (3) denying her of the right to call Secret Service Agent McDade as her witness.

I.

The record amply supports the Government's contention that Bishop was identified beyond a reasonable doubt as the party who passed the $100.00 counterfeit bill to Clerk Ward. While it is true that Ms. Ward did not make an in-court identification of Bishop, she did testify that the same woman who passed the $100.00 bill to her for the purchase of a coat was later identified by her when seen in the presence of Officer Kier at the cashier's cage of the store. Officer Kier identified Bishop in-court as the woman in his custody at the cashier's cage when the Ward identification was made.

The totality of the Government's evidence was strong. Appellant Bishop did not introduce any countervailing evidence. Where the evidence against an accused is strong, as here, it is incumbent that the appellant show that she was so prejudiced by Trial Court error that the "plain error" rule should apply. Fed.R.Crim.P. Rule 52(a), 18 U.S.C.A.; *Hall v. United States,* 404 F.2d 1367 (10th Cir. 1969). A conviction will not be disturbed on appeal where it is clear, after a careful review of the whole record, that the alleged errors did not deprive the accused of her substantial rights. *United States v. Lemon,* 497 F.2d 854 (10th Cir. 1974); *Woodring v. United States,* 367 F.2d 968 (10th Cir. 1966). Such is the case here. The strength of the case against

Bishop is significant. *United States v. Williams,* 445 F.2d 421 (10th Cir. 1971), cert. denied, 404 U.S. 966, 91 S.Ct. 342, 30 L.Ed.2d 286 (1971).

The Trial Court did not err in denying Bishop's motion for judgment of acquittal on the ground of insufficient evidence to support her conviction.

## II.

Bishop contends that there is no evidence establishing that she had knowledge that either of the counterfeit $100.00 bills were in fact counterfeit or that she had any intent to defraud.

■ It is fundamental that the naked act of possessing and passing counterfeit money without knowledge that it is counterfeit does not establish the requisite knowledge essential to the crime of passing or the requisite intent to defraud. *Miller v. United States,* 392 F.2d 790 (10th Cir. 1968); *Holt v. United States,* 404 F.2d 914 (10th Cir. 1968), cert. denied, 393 U.S. 1086, 89 S.Ct. 872, 21 L.Ed.2d 779 (1969).

■ In *Miller, supra,* we recognized that while the use of a counterfeit bill by an individual, standing alone, is not sufficient to establish the requisite knowledge and intent, still the jury has the right to evaluate the *overall actions of a person charged, and knowledge and intent may be inferred therefrom.*

■ A complete review of the record, summarized above, convinces us that the evidence was sufficient to convict Bishop. *See United States v. Holmes,* 453 F.2d 950 (10th Cir. 1972), cert. denied, 406 U.S. 908, 92 S.Ct. 1618, 31 L.Ed.2d 819 (1972); *United States v. Gleeson,* 411 F.2d 1091 (10th Cir. 1969).

Guilt and knowledge can seldom be shown by direct evidence. Among the evidentiary matters the jury could fairly have considered in this case are: the testimony of Secret Service Agent McDade that the two $100.00 bills were obviously counterfeit, a fact even discernable to non-experts Houston and Mulqueen; that when Clerk Ward asked Bishop for smaller currency

relative to purchase of the $59.00 coat, Bishop stated that she did not have smaller denominations than the counterfeit $100.00 bill she handed Ward, even though a short period thereafter a search of her purse disclosed that she did in fact have change in denominations of $20.00 or less equalling at least $275.00; that the drastic color differentiations between the two counterfeit bills and the one legitimate $100.00 bill in her possession was striking; that the difference between the two counterfeit bills was very distinctive and noticeable to a non-expert in terms of paper and color; that the bills lacked proper fibers, contained poor printing and were distinctly different in color from a true $100.00 Federal Reserve Note; and that the bills lacked true paper quality and depth.

The counterfeit bills were admitted in evidence and examined by the jurors who judged them in relation to the testimony elicited by the Government.

Bishop argues that her conviction should be reversed based upon our *Miller, supra,* decision which, she contends, is bolstered by *United States v. Bean,* 443 F.2d 17 (5th Cir. 1971). Such reliance is misplaced. Bean, the accused, was never positively identified, whether in-court or otherwise. Such is not true in the case at bar. While Clerk Ward did not make an in-court identification of Bishop, she did in fact identify her when she (Bishop) was at the cashier's cage in the company of the police officers. Bishop has not made reference to the following language employed by the *Bean* court relating circumstances from which a jury might reasonably infer that the accused knew the money passed was counterfeit:

> Furtive conduct, repeated purchases with large bills rather than change received from earlier purchases, attempts to abandon counterfeit currency . . . have been deemed sufficient to support a finding of guilty knowledge.
> 443 F.2d 17 at 19.

## III.

Bishop argues that the Trial Court erred in denying her Motion for Mistrial when her

counsel objected to the following remarks of the Assistant United States Attorney during his summation to the jury:

One instruction the Government believes will be given to you will concern the elements of the offense that the Government has charged in Count One. The instruction will be to the effect that the elements of Count One are that the defendant in this case, Miss Bishop, passed a counterfeit obligation of the United States. *The evidence in this case is uncontradicted on that point.*

[R., Vol. II, p. 85]. [Emphasis supplied].

The Trial Court denied the motion for mistrial but cautioned the jurors relative to the remarks:

The motion to dismiss will be denied, but the jury is cautioned in that the views of counsel cannot be taken to suggest that it is necessary for the accused in this case to come forward and contradict evidence with other evidence, as I will instruct you in greater detail as I have already referred to earlier in the trial. It's never incumbent upon a defendant in a criminal case to produce any witnesses or produce any evidence, whether in contradiction or not, of anything produced against an accused. It's incumbent upon the Government to prove the essential elements of the offense beyond a reasonable doubt, on the evidence which is presented here, and I will discuss that further in my instructions on the law.

[R., Vol. II, pp. 85, 86].

■ To be sure, we have held that it is reversible error for counsel for the United States or the Trial Judge to comment on the failure of the defendant to take the stand and testify in his own behalf in view of the defendant's constitutional right to remain silent. Such comment, if permitted, would impose a penalty on the exercise of the constitutional privilege. *United States v. Nolan,* 416 F.2d 588 (10th Cir. 1969), cert. denied, 396 U.S. 912, 90 S.Ct. 227, 24 L.Ed.2d 187 (1969); *People v. Modesto,* 66 Cal.2d 695, 59 Cal.Rptr. 124, 427 P.2d 788 (1967), cert. denied, 389 U.S. 1009, 88 S.Ct. 574, 19 L.Ed.2d 608 (1967); *Brown v. Unit-*ed States, 370 F.2d 874 (9th Cir. 1966), cert. denied, 386 U.S. 1039, 87 S.Ct. 1494, 18 L.Ed.2d 605 (1967); *Cloud v. United States,* 361 F.2d 627 (8th Cir. 1966); *See, Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *United States v. Martinez,* 333 F.2d 80 (2nd Cir. 1964), cert. denied, 379 U.S. 907, 85 S.Ct. 199, 13 L.Ed.2d 178 (1964); *See also Ahlstedt v. United States,* 315 F.2d 62 (5th Cir. 1963), cert. denied, 375 U.S. 847, 84 S.Ct. 101, 11 L.Ed.2d 74 (1963).

We have held, however, that it is not error for the prosecutor to call the jury's attention to the fact that the evidence against the defendant is *uncontradicted,* especially where the facts in issue could have been controverted by persons other than the defendant. *United States v. Lepiscopo,* 458 F.2d 977 (10th Cir. 1972). In *Lepiscopo, supra,* the prosecutor commented "all of this evidence is uncontradicted". We held that such a comment is permissible. *See also Ruiz v. United States,* 365 F.2d 103 (10th Cir. 1966). Bishop argues that because the only parties to the alleged passing or uttering of the counterfeit $100.00 bill were Clerk Ward and Bishop that *only* Bishop's *testimony* could have contradicted Ward's evidence. The above contention is, we observe, directed solely to the physical act of *passing* (or uttering) the counterfeit note. Bishop would have us isolate these physical acts from all other acts relating to proof of her guilty knowledge or intent.

The Government presented six witnesses at trial. Bishop's counsel cross-examined only one of them, Clerk Ward, and then *only* in relation to Ward's identification of the bogus $100.00 bill passed to her by Bishop for purchase of the coat. Ward was *not* cross-examined concerning her testimony that she inquired of Bishop whether she had currency in her possession less than the $100.00 bill with which to make payment of the $59.00 coat. It is certain that Bishop did in fact have nearly the exact change then in her possession. This inference may be logically drawn from the evidence relating to the currency contents of her purse

when it was searched about one-half hour later in the store.

■■■ Bishop's reliance on *Desmond v. United States,* 345 F.2d 225 (1st Cir. 1965), is misplaced. There the defendant was charged with the sale or transfer of narcotic drugs to an individual. No others were present. Accordingly, the defendant was the only person who could offer a contradiction to the damaging evidence relating to the essential elements of the offense charged. It is apparent, in the case at bar, that although Bishop could not have called someone other than herself to testify to the "passing" transaction with Clerk Ward, still it seems that if she was in fact innocent, there were witnesses other than herself whom she could have called in relation to the knowledge and intent elements of the charge, to the effect, for example, that Bishop innocently came into possession of the bogus bills, and that there existed a logical explanation for the large amount of valid currency in her possession (and, coincidentally the counterfeit bills) when her purse was searched following her arrest. Under these circumstances, the prosecutor's remark that the Government's evidence is "uncontradicted" cannot be said to have the effect only of inviting the jury's attention to the fact that Bishop had not testified. We recognize that in the heat of a courtroom battle some remarks are made which, given calm reflection, would not have been uttered. It is in this light that we quote the Supreme Court that " . . . unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required". *Schneble v. Florida,* 405 U.S. 427, 432, 92 S.Ct. 1056, 1060, 31 L.Ed.2d 340, 345 (1972). *See also Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). To the same effect, this Court has said that the test in determining when a prosecutor's comment will be considered a defendant's failure to testify is " . . . whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a

comment on the failure of the accused to testify". *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir. 1955); *Doty v. United States,* 416 F.2d 887 (10th Cir. 1968), vacated in part, 401 U.S. 1006, 91 S.Ct. 1247, 28 L.Ed.2d 542 (1970).

We believe that this language from *United States v. Isaacs,* 493 F.2d 1124 (7th Cir. 1974), cert. denied, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974), is pertinent in relation to the prosecutor's remark in the instant case that the Government's evidence is "uncontradicted":

> The case was vigorously and aggressively argued by both sides. The closing argument of a prosecutor need not be "confined to such detached exposition as would be appropriate in a lecture." *United States v. Wexler,* 2 Cir., 79 F.2d 526, 530 . . . because "[t]o shear him of all oratorical emphasis, while leaving wide latitude to the defense, is to load the scales of justice." *DiCarlo v. United States,* 2 Cir., 6 F.2d 364 . . . The controlling standard is found in *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 . . . which says that a United States Attorney "may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones." An advocate is "permitted considerable latitude in replying to his opponent's arguments." [Cases cited].

493 F.2d 1124 at 1164.

■■■ The above quoted language comports with the test we announced in *Knowles v. United States, supra.* A conviction should not be disturbed simply on the predicate that a prosecutor's remark *might* be construed or interpreted as one referring to an accused's election not to testify. We have recognized that a prosecuting attorney has the right to reply to an argument raised by the defense advocate and that in doing so he is permitted "considerable latitude". *Sanchez v. Heggie, Warden,* 531 F.2d 964 (10th Cir. 1976); *United States v. Casteel,* 476 F.2d 152 (10th Cir. 1972).

IV.

Bishop alleges error in the denial of her request to call Special Agent McDade as a defense witness.

At the close of the Government's case, counsel for Bishop stated that he wished to call Agent McDade in order to establish that McDade had, at the preliminary hearing, opined that Bishop had knowledge of the fact that the two $100.00 bills were counterfeit simply because they were in her possession. The Government objected on the ground that McDade, although an expert in detecting counterfeit notes, would not qualify "as an expert in the [this] area of law, and certainly usurp the province of the court". The Trial Court sustained the objection.

It is apparent that Agent McDade's role in this case dealt exclusively with his expert examination of the subject bills. He could not in anywise testify to *facts* lending any credence to Bishop's guilty knowledge or intent beyond his expert opinion identifying the counterfeit bills. Any conclusion (or opinion) McDade may have formed relative to Bishop's guilt by reason of his personal belief that mere possession of the counterfeit bills by Bishop established, per se, the requisite elements of knowledge and intent, was clearly beyond the pale of his expertise and, if admitted in evidence, would have invaded the province of the jury by calling for a conclusion as to a vital question in issue. Such a conclusion was exclusively within the province of the jury to draw from all of the facts and circumstances in evidence. *See* 23 C.J.S. Criminal Law, § 879 and cases cited.

WE AFFIRM.