**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Mitchell Thomas SENTOVICH,
Defendant-Appellant.**

No. 81–7669.

United States Court of Appeals,
Eleventh Circuit.

June 4, 1982.

---

Bruce Maloy, Atlanta, Ga., for defendant-appellant.

Jake Arbes, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before FAY, JOHNSON and HENDERSON, Circuit Judges.

JOHNSON, Circuit Judge:

The ubiquitous DEA Agent Paul Markonni once again sticks his nose into the drug trade. This time he is on the scent of appellant Mitchell Sentovich's drug courier activities. We now learn that among Markonni's many talents is an olfactory sense we in the past attributed only to canines. Sentovich argues that he should have been able to test, at a magistrate's hearing on

issuance of a search warrant, whether Markonni really is the human bloodhound he claims to be. Sentovich's claims, however, have more bark than bite. In fact, they have not a dog's chance of success. Zeke,[1] Rocky,[2] Bodger and Nebuchadnezzar,[3] and the drug dogs of the southeast[4] had best beware. Markonni's sensitive proboscis may soon put them in the dog pound.

## I.

■ An anonymous telephone caller told a Florida Sheriff's department that three males carrying seven suitcases full of marijuana would leave the Fort Myers airport at seven the next morning.[5] The next day local police, proving they had their noses to the grindstone, telephoned Atlanta police detective James Burkhalter and informed him that they had dogged Sentovich and two other men, Mark Diefenthaler and Randall Alander, at the airport. The men had purchased tickets for flights from Fort Myers to Montana, via Atlanta. Police located a cart with luggage to be put on the flight to Atlanta. Not having Drug Enforcement Agency Agent Paul Markonni about, they had to fall back on a mere canine, Rocky, with 50–60 hours training in marijuana detection, who sniffed the bags on the cart as well as other bags nearby. Rocky alerted strongly to two bags belonging to Diefenthaler. Police detained Diefenthaler. Alander, without being asked to do so, left the plane and proceeded to a security lounge. Before the plane left, police found and seized seven pieces of luggage, including two carry-on bags, belonging to the two men. Sentovich, showing what a dog-eat-dog world this is, abandoned the men to their fate and flew on to Atlanta with his two suitcases and shoulder-type bag.[6]

Burkhalter informed the Drug Enforcement Agency of the information he had received. Agent Paul Markonni had the airline on whose flight Sentovich had arrived in Atlanta nose around and locate Sentovich's bags. Markonni, who stated in an affidavit that he had smelled marijuana more than 100 times over the past eleven years, applied his proboscis to the three bags and alerted to two of them because of the odor of marijuana. Not willing to have Sentovich depart from under his very nose, Markonni told Burkhalter of his discovery. Burkhalter stopped Sentovich as he was boarding a flight to Montana and asked him to consent to a search. Sentovich initially consented but, after talking to an attorney, changed his mind and refused to allow a search.

Markonni doggedly went to obtain a search warrant for the two bags that smelled of marijuana. He presented to a magistrate an affidavit containing the information obtained from Florida police and stating that he had detected the nose-tickling odor of marijuana emanating from the luggage.[7] The magistrate issued the warrant after refusing to have the bags taken to the courthouse to be smelled by him or by another neutral party and after refusing to allow counsel for Sentovich to cross-ex-

1. *See United States v. Goldstein*, 635 F.2d 356 (5th Cir.), *cert. denied*, 452 U.S. 962, 101 S.Ct. 3111, 69 S.Ct. 972 (1981).

2. *See infra.*

3. The Court understands that Bodger and Nebuchadnezzar are in training.

4. *See United States v. Viera*, 644 F.2d 509 (5th Cir.), *cert. denied*, 454 U.S. 867, 102 S.Ct. 332, 70 L.Ed.2d 169 (1981).

5. We review these facts on appeal in the light most favorable to the government. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

6. Police did not continue their inspection of the plane's luggage in order to find Sentovich's bags even though they had been informed by airline officials that Sentovich was a companion of the two men. An officer testifying at the suppression hearing stated that this failure to continue looking was an oversight. He appears to attribute the oversight to his mistaken conclusion that the carry-on bags were part of the luggage to which the informant had referred and hence that he had accounted for all seven bags for which he was searching.

7. The affidavit also stated that Sentovich was a documented drug violator and domestic drug courier.

amine Markonni. The counsel asked to be allowed to be present when the bags were opened. Markonni advised that counsel could be present but that he would not allow counsel to ride with him to the airport and would open the bags immediately. Markonni returned to the airport. Before defense counsel arrived, he opened the two bags in which he had detected the odor and found marijuana in them. Sentovich was convicted of possession of marijuana with intent to distribute, in violation of 21 U.S.C.A. § 841(a)(1).

## II.

Sentovich argues that he should have been able to cross-examine Markonni before a search warrant was issued. Unless some compelling reason requires an ex parte hearing, he asserts that a police officer will be able to obtain a warrant too dog-cheaply unless the hearing on whether to issue a search warrant is adversarial. The Supreme Court has ruled otherwise. "To mandate an evidentiary hearing [with respect to a request for a search warrant], the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof .... Allegations of negligence or innocent mistake are insufficient." *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978); *see also United States v. Jeffers*, 621 F.2d 221, 227 (5th Cir. 1980). Sentovich asserts that cross-examination would have provided an opportunity to test Markonni's ability to discern the odor of marijuana. Neither on appeal nor below does he allege that Markonni deliberately lied or recklessly disregarded the truth in stating that he nosed out marijuana. Without a claim of such doggery, the magistrate was on the nose in finding that no adversarial hearing was necessary.

Sentovich next asserts that the magistrate should have ordered the bags to be brought to the court or that Markonni

should have awaited the arrival of Sentovich's counsel before opening the bags. Because of the absence of third-party confirmation, he argues that important evidence was destroyed. Sentovich suggests several remedies: exclusion of the alleged odor of the luggage from a determination of whether probable cause for the warrant existed, suppression of the evidence of the marijuana discovered in the bags, or dismissal of the indictment.

■ We find no error by the magistrate or misconduct by the government. We address first Sentovich's arguments concerning the need to exclude the evidence from a finding of probable cause for a warrant and concerning the suppression of the evidence of marijuana. He raised neither argument in his motion to suppress. A party not raising an argument below waives his right to raise it on appeal absent plain error. *United States v. Long*, 674 F.2d 848, 851, 854 n.9, 855 (11th Cir. 1982); *United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981). We find no plain error. Indeed, reaching the merits, we find no error at all. The magistrate need not have required a neutral party to smell the luggage. As we noted above, *Franks* supplies the standard for determining when an evidentiary hearing is necessary. Since there was no allegation of deliberate falsehood or reckless disregard of the truth by Markonni, there was no reason for the magistrate to hold a hearing allowing third-party confirmation of Markonni's sense of smell. There was also no misconduct by Markonni in failing to delay opening the luggage until Sentovich's counsel arrived at the airport. Police with a search warrant simply need not await the arrival of counsel before executing that warrant. Moreover, the inability of counsel to smell marijuana would have no bearing on the validity of the warrant. Even if Markonni was wrong in thinking that he smelled marijuana, his misstatement would invalidate the warrant only if it was intentional or made in deliberate disregard of the truth. *United States v. Astroff*, 578 F.2d 133, 135

(5th Cir. 1978) (en banc). We note again that Sentovich never alleges any malodorous motive or activity by Markonni that was intentional or in reckless disregard of the truth.[8]

■ Sentovich did seek dismissal of the indictment against him because of the alleged destruction of the evidence of the odor of the marijuana. At the very least, Sentovich must make some showing of the materiality of the evidence the government suppressed. *United States v. Agurs*, 427 U.S. 97, 103–14, 96 S.Ct. 2392, 2397–2402, 49 L.Ed.2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); *United States v. Anderson*, 574 F.2d 1347, 1352–56 (5th Cir. 1978); *Armstrong v. Collier*, 536 F.2d 72, 77–79 (5th Cir. 1976); *United States v. Wander*, 601 F.2d 1251, 1263 (3d Cir. 1979).[9] The standard for determining materiality varies somewhat with the situation at issue. *See Agurs, supra; Anderson, supra.* Here, however, we need not inquire into the exact applicable standard. Whatever the standard may be, Sentovich has not met it. The odor of the marijuana—as opposed to the marijuana itself—was of no relevance to Sentovich's conviction.

Markonni emerges with his nose unbloodied and his tail wagging. Sentovich's claims are without merit. Having also reviewed the evidence, we find it sufficient

for his conviction. The judgment of the district court is AFFIRMED.

---

**8.** Sentovich also alleges that there was insufficient evidence of the reliability of the dog smelling the bags at Fort Myers for the dog's reaction to be used as a basis for the search warrant. His argument is that a mere statement that the dog had been trained in drug detection was not enough without an accompanying statement that the dog had proved reliable in the past and that an experienced handler was with the dog. Since we believe Markonni's statement concerning his detection of an odor of marijuana was sufficient alone for a finding of probable cause, the adequacy of the proof of the reliability of the dog is not essential to our holding. We believe, in any event, that his argument is without merit. The case on which Sentovich relies, *United States v. Klein*, 626 F.2d 22, 27 (7th Cir. 1980), does state that statements that a dog had had training and had proved reliable in the past were sufficient indicia of the dog's reliability. The court did not, however, state that the handler had to be trained or that training alone was insufficient to show reliability. Two other circuits have held that training of a dog alone is sufficient proof of reliability. *United States v. Venema*, 563 F.2d 1003, 1005 (10th Cir. 1977); *United States v. Meyer*, 536 F.2d 963, 965–66 (1st Cir. 1976). We endorse the views of those circuits.

**9.** *Agurs, Brady,* and *Anderson* deal with government suppression of evidence generally, not with the precise issue of government destruction of evidence. Cases considering the destruction of evidence note that the government must make "earnest efforts" to preserve the evidence. *See, e.g., Armstrong, supra; Brady, supra; United States v. Bryant*, 439 F.2d 642, 647–53 (D.C.Cir.1971). Since we find that the evidence was not material to Sentovich's conviction, we need not address the nature of the government's efforts to preserve the evidence.