*McKee-Berger-Mansueto, Inc. v. Board of Education,* 691 F.2d 828, 836 (7th Cir. 1982).

■ The precise language employed in the instant case entitles Ash, Anos to "... Forty Percent (40%) of any recovery made in [Brass Kettle's] behalf...." This language mirrors the language used in the retainer agreement in *McKee-Berger-Mansueto.* That agreement entitled the attorneys to " 'one-third (⅓) of any and all recoveries made on the claims by virtue of trial, settlement, or other disposition of the proposed litigation.' " *Id.* at 837. Because the instant agreement entitles Ash, Anos to a percentage of any recovery, as did the *McKee-Berger-Mansueto* agreement, and because the Illinois courts have not ruled inconsistently with *McKee-Berger-Mansueto,* we find that Ash, Anos has a valid equitable lien in the recovery made on behalf of Brass Kettle.

■ Ash, Anos' lien attached when they and Brass Kettle entered the retainer agreement on October 11, 1981. The agreement represented promises, made contemporaneously, by Ash, Anos to represent Brass Kettle, and by Brass Kettle to pay Ash, Anos a certain sum, including a percentage of any recovery, for that representation. As such, this agreement did not constitute a preferential transfer because it was not a "transfer of property of the debtor—(2) for or on account of an antecedent debt owed by the debtor before such transfer was made...." 11 U.S.C. § 547(b) (Supp. V 1981). We, therefore, reverse the decision of the district court.

### *Conclusion*

The decison of the district court is RE-VERSED and this case is REMANDED for proceedings consistent with this opinion.

UNITED STATES of America, Plaintiff-Appellee,

v.

Donald Herbert WINDFELDER, Defendant-Appellant.

No. 85–1780.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1986.

Decided May 7, 1986.

William M. Coffey, Coffey, Coffey & Geraghty, Milwaukee, Wis., for defendant-appellant.

Melvin K. Washington, Asst. U.S. Atty., Joseph P. Stadtmueller, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and BAUER and POSNER, Circuit Judges.

BAUER, Circuit Judge.

Defendant Donald Herbert Windfelder was convicted of understating his income in his 1978 federal income tax return, in violation of 26 U.S.C. § 7201, and of understating the estate of his deceased aunt,

Lauretta Windfelder, in preparing her estate tax return, in violation of 26 U.S.C. § 7206(1). Defendant was sentenced to eighteen months imprisonment on the first charge to be followed by five years probation for the second charge. He was also ordered to make restitution in the amount of $409,714.13 to the estate of his deceased aunt.

Defendant appeals his conviction on three grounds. First, he contends that the trial court erroneously permitted the government to subpoena certain documents and witnesses protected by his attorney-client privilege. Second, he contends that the trial court erroneously admitted into evidence opinion testimony of several of the government's expert witnesses. Finally, he contends that the trial court's jury instructions regarding the definitions of "embezzlement" and "fiduciary relationship" violated his constitutional rights. We reject all of defendant's arguments and affirm the judgment of the district court.

## I.

On April 21, 1978, Lauretta Windfelder was admitted to a nursing home in Milwaukee, Wisconsin, suffering from a variety of mental and physical debilities exacerbated, if not caused by, her age of 90 years. Some three weeks before, she had been discovered in dire condition in her home by a visiting nurse and had been hospitalized. Lauretta Windfelder had raised her nephew, the defendant in this case, from 1934, when he moved in with her at the age of twelve, until defendant married in 1950. In 1978 the defendant was a vice-president at the Northwestern Mutual Life Insurance Company in Milwaukee, Wisconsin. On April 24, 1978, three days after Lauretta Windfelder's admission into the nursing home, defendant presented a Power of Attorney form purportedly signed by Lauretta Windfelder to two of his co-workers to sign as witnesses and to a third for notarization. None of the three workers saw Lauretta Windfelder sign the form.

At the end of 1977, Lauretta Windfelder's net worth was approximately $664,-856.87. By the end of 1978, her net worth had fallen to $150,829.80. Lauretta Windfelder died on October 23, 1979, and by the time her federal estate tax return was filed her assets had further dwindled to approximately $58,332.47. The government presented extensive evidence at trial detailing the defendant's transfer of approximately $506,937.70 of Lauretta Windfelder's assets in 1978 and 1979 into various accounts opened by the defendant in his name or jointly with his wife. IRS experts testified at trial that $397,876.70 of these transfers were unauthorized.

Shortly after Lauretta Windfelder's death, the defendant retained the Milwaukee law firm of Godfrey & Kahn to assist him in probating Lauretta Windfelder's estate. Pursuant to Wisconsin law, the defendant was appointed personal representative of the estate. The defendant represented to attorney John Byers that the estate consisted solely of $3,300 in a local bank and approximately $40,000 in U.S. Treasury Notes. A paralegal with the law firm engaged in numerous telephone conversations with the defendant regarding the information that was to be contained in the estate tax return and other probate documents, but the defendant did not mention any transfer of assets from the estate other than a $69,000 gift in 1978 and another $69,000 gift in 1979, both to the defendant. The law firm then prepared a federal estate tax return for the estate based on the information given by the defendant, which he signed on July 22, 1980.

In March 1981, the IRS contacted the law firm, notifying the attorneys that it was reviewing Lauretta Windfelder's estate tax return and requesting copies of her income tax returns for the years immediately preceding her death. Byers relayed this information to the defendant and arranged for a conference to determine why the assets in the estate were so much less than those listed in Lauretta Windfelder's last income tax returns. The defendant engaged in several conferences with the law firm and supplied additional information regarding the estate. Several weeks later the IRS

requested the law firm to supply it with a list of U.S. Treasury Bonds that had been redeemed at various times and that were reflected in Lauretta Windfelder's prior income tax returns. The law firm asked the defendant to supply it with the list for this purpose, and on May 21, 1981, he tendered to the law firm a copy of what purported to be bank records for accounts held by Lauretta Windfelder and himself, along with a summary of what the defendant represented as transfers to and from those accounts. Even with these documents, the law firm was unable to account for approximately $200,000 in assets listed in Lauretta Windfelder's prior income tax returns.

When the law firm advised the defendant of this discrepancy, he provided the law firm with additional records. On June 8, 1981, the defendant provided the law firm with even more records. Nonetheless, a discrepancy still existed, and the law firm concluded that the different sets of figures were irreconcilable. Shortly thereafter, the law firm notified the defendant that it would no longer represent him.

The defendant obtained new counsel and engaged in a new series of conferences and document production, but the defendant's figures still refused to align themselves with those of the IRS. On July 15, 1981 the defendant and his new counsel met with an IRS attorney and submitted a modified explanation, based on unincluded "underlying documents," purporting to account for the erstwhile assets of Lauretta Windfelder's estate. The unpersuasive nature of this explanation led to a conference in Washington, D.C. on March 12, 1984 between the defendant's counsel and an attorney for the Criminal Tax Section of the Department of Justice regarding the defendant's personal tax liability for 1978 and his participation in the filing of Lauretta Windfelder's estate tax return. The report by the attorney for the Department of Justice states that at this meeting defendant's counsel took the position that, because the defendant was not an expert estate tax preparer, he had trusted his attorneys to prepare the return correctly and had answered the questions put to him by these attorneys truthfully. The problem, the defendant's counsel asserted, was that these attorneys had not asked him "the right questions." After this explanation, the defendant was finally indicted.

## II.

■ The defendant first argues that the district court erred in allowing the government to subpoena the attorneys and paralegal from the law firm of Godfrey & Kahn who worked on Lauretta Windfelder's estate tax return and the documents in their possession relating to the preparation of that tax return. Defendant asserts that under Wisconsin law he engaged the law firm to represent himself, as personal representative of the estate, as well as to represent the estate, when he hired the firm to prepare the estate tax return. Thus, the defendant contends that the testimony of the witnesses from Godfrey & Kahn and the materials that were subpoenaed were privileged from disclosure under the attorney-client privilege.

Even accepting the defendant's argument that he personally stood in an attorney-client relationship with Godfrey & Kahn in regard to the preparation of Lauretta Windfelder's estate tax return, we do not believe that the information sought by the subpoenas was protected by the attorney-client privilege because that information was not confidential. In *United States v. Lawless*, 709 F.2d 485 (7th Cir. 1983), this court held that "information transmitted for the purpose of preparation of a tax return, though transmitted to an attorney, is not privileged information." 709 F.2d at 488. One of the reasons underlying this holding was that "[w]hen information will be transmitted to a third party (in this case on a tax return), such information is not confidential." *Id.* at 487. *Lawless* further held that "disclosure of tax information effectively waives the privilege 'not only to the transmitted data but also as to the details underlying that information.'" *Id.* at 488 (quoting *United States v. Cote*, 456 F.2d 142, 145 (8th Cir.1972)).

■ In this case the government also sought information transmitted after the estate tax return was filed, but the defendant has failed to meet his burden of showing that this information was confidential. *See, e.g., Lawless,* 709 F.2d at 487. To the contrary, the evidence shows that the defendant transmitted this information to Godfrey & Kahn with the intent that it would be used to explain to the IRS the gross disparity between the figures in Lauretta Windfelder's estate tax return and her last income tax returns. Godfrey & Kahn expressly informed the defendant that the IRS was requesting information to explain the discrepancies and that the law firm intended to comply with these requests. The defendant repeatedly supplied the law firm with records and documents for this purpose. Further, defendant himself submitted a "modified explanation" of the estate tax return directly to the IRS on July 15, 1981. We therefore hold that the information submitted after the estate tax return was filed was also not privileged.

### III.

■ At trial, the government called three expert witnesses to testify regarding Lauretta Windfelder's estate tax return and defendant's 1978 income tax return: IRS Special Agent William Gardiner, IRS Revenue Agent Richard Breitzman, and IRS Attorney Leo Miller. The defendant does not contest that each witness was properly qualified as an expert or that each witness properly testified as to the transfer of Lauretta Windfelder's assets to the various accounts held by the defendant. The defendant contends, however, that the trial court improperly admitted into evidence opinion testimony by the three experts regarding the intentions of both Lauretta Windfelder and the defendant.

Under Rule 702 of the Federal Rules of Evidence, expert testimony is admissible when "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." An expert's testimony may take the form of an opinion if it " 'serves to inform the [trier of fact] about affairs not within the full understanding of the average man.' " *United States v. West,* 670 F.2d 675, 682 (7th Cir. 1982) (quoting *United States v. Webb,* 625 F.2d 709, 711 (5th Cir.1980)). An expert's opinion is not inadmissible simply because it addresses an ultimate issue to be decided by the trier of fact, FED.R.EVID. 704(a), but a recent amendment to Rule 704 added the following provision:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are for the trier of fact alone.

FED.R.EVID. 704(b). Although this provision was added to Rule 704 to limit psychiatric testimony when a criminal defendant relies upon the defense of insanity, see S.Rep. No. 225, 98th Cong., 1st Sess. 230 (1983), U.S.Code Cong. & Admin.News 1984, pp. 3182, 3412,[1] Congress intended this provision to extend "beyond the insanity defense to any ultimate mental state of the defendant that is relevant to the legal conclusion sought to be proven ... *e.g.,* premeditation in a homicide case, or lack of predisposition in entrapment." *Id.* at 231, U.S.Code Cong. & Admin.News 1984, p. 3413. Finally, we note that the trial judge has wide discretion in ruling on the admissibility of expert testimony. *West,* 670 F.2d at 682.

The defendant objected to the following testimony by Agent Gardiner:

> [A]fter Ms. Windfelder went in the nursing home, [defendant] took control of her affairs, transferred her wealth to him for his own personal use. There was no— any other evidence disclosed during the investigation or presented which would

---

1. The Senate report stated: "The purpose of this amendment is to eliminate the confusing spectacle of competing expert witnesses testifying to directly contradictory conclusions as to the ultimate issue to be found by the trier of fact." *Id.*

indicate that she had earmarked any additional monies of her wealth to Mr. Windfelder.

TR. 828–29. The defendant objected again when Gardiner later reiterated this testimony. TR. 846. Defendant also objected to the following testimony by Attorney Miller:

> There were transfers made to Donald Windfelder without consideration that are assets that should have been included in decedent's estate. As a consequence, the estate has a claim against these transfers in view of the fact that the decedent, Lauretta Windfelder, apparently did not make them herself or approve of them.

TR. 904. Finally, the defendant objects to Agent Breitzman's testimony that he believed certain monies received by the defendant should have been declared in his income tax return because

> [t]here were no representations made to the effect that the amount was a gift until later in the investigation, after Mr. Gardiner had contacted certain individuals. The initial representation of that amount made at the meeting with Mr. Gardiner, Mr. Windfelder and [defendant's counsel], I believe, was that these amounts were payments out of the estate for the benefit of Lauretta Windfelder.

TR. 961. The defendant asserts that this testimony was inadmissible because it concerned the intentions of the defendant and Lauretta Windfelder, and the experts did not have expertise "in the area of human intention." The defendant also asserts that these opinions were not helpful to the jury in resolving the issue of whether the defendant misappropriated Lauretta Windfelder's assets because the jury could adequately decide this issue based on the documents alone. The defendant did not mention Rule 704(b) in his brief or at oral argument, and the record does not indicate that Rule 704(b) played any part in the defendant's objections at trial or the trial judge's rulings upon the evidence.

■ We first note that none of the testimony recounted above expressed an opinion or conclusion as to the defendant's willfulness or knowledge in preparing or filing the false tax returns, but related only to whether the transfers of assets in question were authorized by Lauretta Windfelder for her expenses, were gifts to the defendant, or were utilized by the defendant without authorization and the resulting tax consequences. Expert testimony by an IRS agent which expresses an opinion as to the proper tax consequences of a transaction is admissible evidence. *See United States v. Gold,* 743 F.2d 800, 817 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985). Similarly, we find that an IRS expert's analysis of the transaction itself, which necessarily precedes his or her evaluation of the tax consequences, is also admissible evidence.

To the extent that this testimony reflected the intent of Lauretta Windfelder, we do not believe that these witnesses needed to have been qualified as experts in psychiatry or philosophy before rendering the conclusions to which the defendant objects because these conclusions were limited to whether the documents in evidence indicated that Lauretta Windfelder had authorized the transfer of her assets to defendant or whether, in view of these documents, the defendant transferred her assets into his accounts on his own. *See Kelsay v. Consolidated Rail Corp.,* 749 F.2d 437, 449 (7th Cir.1984) (expert had reasonable factual basis for his conclusions). The experts utilized their expertise in accounting and tax matters in making these determinations, not their knowledge of the workings of the human mind. Moreover, these opinions are not precluded by Rule 704(b) because Lauretta Windfelder is not a defendant in this case and her intent is not an element of the crimes charged. We therefore find that the trial court did not abuse its discretion in admitting this testimony into evidence because the IRS experts had a sufficient foundation for their testimony. *See Kelsay,* 749 F.2d at 449.

Similarly, we disagree with defendant's position that this testimony was not helpful to the jury because we find that the IRS

experts' conclusions were based on their evaluation of evidence (the tax returns and related financial documents) that was within the area of their special expertise. The defendant does not contest that the basis for the experts' opinions involved an area beyond the full understanding of the average person, and we therefore find that the district court did not abuse its discretion in ruling that their informed conclusions as to the meaning of that evidence may also have been helpful to the jury in interpreting that evidence. *See United States v. McCoy*, 539 F.2d 1050, 1062 (5th Cir.1976) (expert drew conclusions as to meaning of conversation with defendant based on expert's knowledge of bookmaking business); McCORMICK, EVIDENCE § 13 (2d Ed.1972) (expert may draw inferences from the facts).

■ The defendant also objected to testimony by Agent Gardiner that the defendant "intentionally understated his income" in his 1978 income tax return, TR. 843, and to the following testimony, also by Agent Gardiner:

> [I]t was my opinion, at the time [the defendant] signed his tax return, he was well aware of what happened to [Lauretta Windfelder's] assets prior to her dying, and he continued to or attempted to purport something other than what really happened with these assets during the meeting with [IRS Agent] Beighton.

TR. 858–59. We disagree with the defendant's arguments that this testimony was inadmissible for the same reasons that we found the trial judge did not abuse his discretion in admitting the opinion testimony about Lauretta Windfelder's intent. *See Torres v. County of Oakland*, 758 F.2d 147, 150–51 (6th Cir.1985) (questions calling for opinion testimony as to intent proper); *United States v. Bishop*, 534 F.2d 214, 221

(10th Cir.1976) (prior to enactment of Rule 704(b), expert opinion testimony as to defendant's guilty knowledge or intent not *per se* inadmissible).[2] Under Rule 704(b), however, it was error to admit the testimony that the defendant intentionally understated his income and that "he was well aware of what happened" to Lauretta Windfelder's assets. These statements impermissibly state an opinion as to the defendant's knowledge or willfulness, a mental state which constitutes an element of the crimes charged.

■ As stated above, the defendant did not raise a Rule 704(b) argument at trial and thus has waived this argument on appeal. *United States v. Sentovich*, 677 F.2d 834, 837 (7th Cir.1982) (citations omitted). We therefore need only evaluate this error to determine whether it amounted to plain error, *id.*, but even if the defendant's objection can be construed as raising an argument under Rule 704(b), we nevertheless find that the error in admitting this testimony does not require reversal even under the harmless error standard. We hold that this error was harmless because the other evidence supporting the government's contention that the defendant willfully evaded his income tax and falsified Lauretta Windfelder's estate tax return was overwhelming. *See e.g., United States v. Koopmans*, 757 F.2d 901, 905 (7th Cir.1985); *United States v. Metcalfe*, 698 F.2d 877, 883 (7th Cir.), *cert. denied*, 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 814 (1983). The defendant created a tangled web of documents, figures and explanations during the several years he sought to convince the IRS that the tax returns were in order from which we do not believe he could have extricated himself at trial even if these two statements had been stricken.

---

**2.** The defendant relies on *Bishop* as support for his position, citing the court's holding that "the requisite elements of knowledge and intent [were] clearly beyond the pale of [the witness's] expertise" and also impermissibly invaded the province of the jury. 534 F.2d at 221. The defendant's argument ignores the reason underlying the court's holding: that the testimony was excluded because the expert "could not in anywise testify to *facts* lending any credence to [defendant's] guilty knowledge or intent." *Id.* (emphasis in original). Further, Rule 704(a) provides that testimony as to an ultimate issue to be decided by the jury is not excludable for that reason alone.

## IV.

The defendant's final contention is that the trial court improperly instructed the jury with respect to the charge of income tax evasion. The trial court instructed the jurors that they could not find the defendant guilty unless they found beyond a reasonable doubt that the defendant had embezzled the assets that were transferred to his accounts. In its definition of "embezzled," the court stated that

> [e]mbezzled means willfully to take or to convert to one's own use others' money or property, of which the wrongdoer acquired possession lawfully, by reason of some office of employment or position of trust. To convert money or property to one's own use means to apply or appropriate or use such money or property for the benefit or profit of the wrongdoer.

The court also instructed the jurors as to the meaning of a fiduciary relationship as it pertained to the power of attorney allegedly obtained by the defendant from Lauretta Windfelder. The court stated:

> The fiduciary must show specific language in the power of attorney document in order to claim that any of his authorized powers may be exercised for the benefit of the fiduciary as well as the principal.
>
> Now, an agent occupying a fiduciary relationship is guilty of wrongdoing when he engages in self-dealing by which he gains financial benefit out of a financial transaction with the corpus, that is, with the principal or the money, that he is supposed to oversee in his fiduciary capacity.

The defendant contends that the instruction on fiduciary relationships impermissibly shifted the burden of persuasion as to an element of the crime to the defendant by requiring him to show specific language in the power of attorney document authorizing his actions. The defendant also claims that the combination of these two instructions may have directed a verdict against him because the embezzlement instruction refers to a "wrongdoer" and the power of attorney instruction states that a fiduciary who engages in self-dealing "is guilty of wrongdoing." Thus, defendant claims that the jury, in finding that the defendant was a fiduciary who engaged in self-dealing, may have felt compelled to find that he had embezzled.

As the government points out, the defendant's counsel failed to make this objection with sufficient specificity before the instructions were read to the jury, as required by Rule 30 of the Federal Rules of Criminal Procedure. The defendant's counsel merely stated: "I object to the last three instructions on the power of attorney." TR. 1290. This objection plainly did not give the trial court an opportunity to address the grounds for the defendant's objection. *See, e.g., United States v. Verkuilen,* 690 F.2d 648, 652–53 (7th Cir.1982). The defendant claims that the court was advised of the specific grounds on the previous day, but the court informed the defendant's counsel that the previous day's discussion was of no import and that there was no objection on the record. TR. 1290. After this admonishment, counsel made only the general objection quoted above. We therefore review defendant's claim on appeal under the standard of "plain error." *See Verkuilen,* 690 F.2d at 652.

"In deciding whether a defect in a jury instruction constituted a 'plain error,' we must examine the entire record before us, and determine whether the instructional mistake had a probable impact on the jury's finding that the defendant was guilty." *United States v. Jackson,* 569 F.2d 1003, 1010 (7th Cir.1978). In this case we do not believe that the defendant assumed any burden of proof regarding his supposed role as a fiduciary. Although this part of the power of attorney instruction begins "The fiduciary must show specific language ...," this choice of wording does not alter the import of the instruction, which merely informed the jury that the power of attorney document must contain specific language authorizing the fiduciary to exercise that power for his own benefit, or he may not do so. Moreover, the record reveals that the government met its burden

of proof in this regard by introducing the document into evidence and pointing out to the jury that the power of attorney supposedly held by the defendant contained no such language. The defendant was not required to show the presence of such language in the document at trial, but any argument defendant made to the effect that he was empowered to make the transfer of Lauretta Windfelder's assets to himself was in the nature of an affirmative defense, and was not an assumption of the burden of proof. It is clear from the record that the government shouldered the burden of proof as to this element.

We also reject the defendant's claim that the combination of these two instructions directed a verdict against him as to the income tax charge. We do not believe that simply using the term "wrongdoer" in the embezzlement instruction signaled to the jury that it had to find that the defendant embezzled funds if it found that he had engaged in any other type of wrongdoing. The defendant's interpretation of the possible effect of this wording is strained and does not consider "all of the jury instructions together 'as a connected series without undue emphasis given to any one of them.'" *Verkuilen*, 690 F.2d at 653 (quoting *United States v. Hamilton*, 420 F.2d 1096, 1098 (7th Cir.1970)).

Moreover, in view of the entire record, we do not find that these instructions were "plain error". First, the jury was instructed that the defendant was presumed innocent throughout the trial and that the government carried the burden of proof as to each element of the crime charged. *See Verkuilen*, 690 F.2d at 653. Further, the defendant does not claim that either of the contested instructions misstates the area of law it addresses, *id.*, or that the law upon which the jury was instructed was not relevant to the facts of the case. Finally, in view of the overwhelming evidence presented of the defendant's guilt, we are not persuaded that the jury's understanding of the evidence or the issues was clouded by the instructions or that these instructions had any probable impact on the jury's finding of guilt.

For the reasons stated above, the conviction of Donald Herbert Windfelder is

AFFIRMED.