**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 92-3789

UNITED STATES OF AMERICA,

Plaintiff-
Appellee,

VERSUS

ELIZABETH ANN PRATT STOKES,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
(August 9, 1993)

Before KING, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

DeMoss, Circuit Judge:

I.

Stokes was employed as the office manager of a satellite Tulane University Medical Center Cardiology Clinic (Tulane) in Hammond, Louisiana, from March 30, 1985, until June 2, 1987. In this capacity, she had signature authority on the clinic's bank account.

Stokes used money embezzled from Tulane to open two bank accounts in the name of Cardiology Associates of Hammond. She

deposited $134,000 into the first Cardiology Associates account and $71,000 into the second. Stokes's husband, Jimmy, was the only person authorized to withdraw money from the second account.

Stokes wrote checks on the first Cardiology Associates account to herself and Jimmy for approximately $20,000 in 1986, and $30,000 in 1987.

Stokes purchased a money order for $15,000 with a check written to herself from the Cardiology Associates accounts and bought a car. Stokes then purchased a second money order for $15,000 with a check written to herself and bought some land.

Stokes and her husband, Jimmy, filed joint income tax returns in 1986 and 1987. The Stokes's 1986 return reflected their income as $30,876. Their 1987 return reflected their income as $20,464. Stokes never gave her tax accountant any information about the checks that came from the first Cardiology Associates accounts. Nor did the tax preparer ever see any statements from the second Cardiology Associates. Therefore, none of the amounts from these checks were declared on the Stokes's income tax returns. Rather, Stokes only reported the amounts reflected on her W-2 forms received from Tulane Medical Center.

On June 5, 1992, a jury convicted Stokes of making a fraudulent income tax return for the tax years 1986 and 1987, in violation of Title 26, U.S.C. § 7206(1). The probation officer recommended in Stokes's presentence investigation (PSI) report that the district court adjust Stokes's base offense level upward two levels for using sophisticated means to impede discovery of the

2

nature or extent of her offense pursuant to U.S.S.G. § 2T1.3.  The district court adopted the PSI recommendations and made the upward adjustment.

On appeal to this Court, Stokes contends that the district court improperly qualified an expert witness; the evidence at trial was insufficient to find Stokes guilty of the indictment; and the trial court erred in making a two level enhancement for the use of sophisticated means.

We AFFIRM in part and AMEND in part.

## II.

WHETHER THE DISTRICT COURT IMPROPERLY QUALIFIED AN EXPERT WITNESS.

Michael Susano, a revenue agent and eighteen year employee of the IRS, was permitted by the district court to testify as an expert in the calculation and compilation of income and taxes.

Stokes objected at trial to Mr. Susano's admission as an expert because Mr. Susano had not prepared tax returns for taxpayers for almost thirty years, all of his relevant experience had been as a revenue agent with the IRS, and there was no indication that he had ever been considered an expert in his field outside of the Internal Revenue Service.

Whether a witness is shown to be qualified as an expert is a preliminary question to be determined within the sound discretion of the trial judge.

Trial judges have commonly allowed IRS agents to qualify as experts in the field of tax computations in criminal tax cases. See e.g. United States v. Mohney, 949 F.2d 1397, 1406 (6th Cir.

3

1991); <u>United States v. Windfelder</u>, 790 F.2d 576, 581 (7th Cir. 1986).

The trial judge did not abuse his discretion in allowing an IRS revenue agent to testify as an expert in the calculation of income and taxes.

III.

<u>WHETHER THERE WAS SUFFICIENT EVIDENCE TO FIND THE DEFENDANT GUILTY OF THE INDICTMENT</u>.

Stokes next complains that the evidence did not establish that she was aware that the proceeds in the checks she wrote to her benefit from the clinic's account should have been included in the computation of her income.

A conviction cannot stand unless the evidence supporting it is such that when it is viewed in the light most favorable to the prosecution, it can be found that any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

Stokes could have asked her accountant whether the $30,000 used to purchase the car and real estate was taxable income. Since she never told the accountant about the money, the jury was free to make the inference that this was a calculated decision by her. Criminal willfulness can be inferred when a defendant does not supply her tax preparer with evidence of substantial items of income. <u>United States v. Frank</u>, 437 F.2d 452, 453 (9th Cir. 1971), <u>cert. denied</u>, <u>Frank v. United States</u>, 402 U. S. 974 (1971). Moreover, evidence of a consistent pattern of under reporting large

4

amounts of income will support the necessary inference of willfulness. Escobar v. United States, 388 F.2d 661, 661 (5th Cir. 1967), cert. denied, Escobar v. United States, 390 U.S. 1024 (1968).

IV.

WHETHER THE TRIAL COURT ERRED IN MAKING A TWO LEVEL ENHANCEMENT FOR THE USE OF SOPHISTICATED MEANS.

Stokes finally contends that the district court erred in giving her a two level adjustment, pursuant to § 2T1.3(b)(2) of the Sentencing Guidelines, for using sophisticated means to impede discovery. Stokes argues that since the enhancement authorized by §2T1.3(b)(2) is directed toward concealment of the offense and that as she did nothing tending to conceal or to impede discovery of the purported tax offense, she should not be penalized.

The government asserts that the evidence proves otherwise. It points out that Stokes set up two clinic accounts under the name of Cardiology Associates of Hammond. One account was under her signature authority, but did not have a taxpayer identification number. The second account was under her husband's signature authority. She wrote $50,589 worth of checks from the first account. Of this amount, two checks, each in the amount of $15,000, were written by her and then transferred into cashier's checks and these checks were then used to purchase the car and land. The government contends that the only possible purpose behind exchanging clinic checks for cashier checks would be to break the link between Stokes and Tulane. It states that by transferring the checks in this manner, Stokes impeded discovery.

5

Likewise, the government argues, the second account in her husband's name also could have had no other purpose than to create a distance between herself and the $71,000.

The tax fraud guideline directs a district court to add two levels to a defendant's base offense level "[i]f sophisticated means were used to impede discovery of the nature or extent of the offense." U.S.S.G. § 2T1.3(b)(2).

However, the guideline adjustment for the use by a defendant of sophisticated means in committing an offense provides that the sophisticated means be tied to the offense of conviction. Any sophisticated means that Stokes employed to hide the money that she took from Tulane occurred in her scheme to embezzle from Tulane. It did not involve the evasion of taxes, the offense for which Stokes was convicted. There is nothing sophisticated about simply not disclosing income to your accountant. Simply put, Stokes didn't try to hide the money because she didn't want to pay her taxes. She hid it from Tulane because she didn't want Tulane to know that she had taken money from their accounts.

We find therefore, that the trial court misinterpreted the guidelines when it ordered a two level increase for sophisticated means.

Additionally, the record reflects that the trial judge erroneously considered Stokes's sentence to be a Class D felony. Stokes was convicted pursuant to 26 U.S.C. § 7206(1), which imposes a maximum term of three years of imprisonment.

Count 1 relating to 1976 taxes was a pre-guideline offense and therefore the guideline provisions do not apply to that Count. However, as to Count 2 of the indictment, based on a total offense level of 11 and a criminal history category of I, the PSI found the guideline imprisonment range to be eight to fourteen months.

The PSI considered Count 2 to be a Class D felony, which carries with it a term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2).[1] Pursuant to § 5D1.1, the PSI stated that the Court shall order a term of supervised release to follow imprisonment when a sentence of imprisonment of more than one year is imposed; and that as to Count 2, a Class D felony, the term of supervised release should be at least two years but not more than three years. § 5D1.2(b)(2).

The district court followed the PSI recommendation outlined above and sentenced Stokes to four months imprisonment and three years supervised release as to Count 2.[2]

The PSI erred in classifying Stokes's offense as to Count 2 as a Class D felony. We agree with the PSI's assertion that the term of imprisonment authorized under 26 U.S.C. § 7206(1) is not more than three years. However, we find that Stokes's offense as to Count 2 is a Class E felony and not a Class D felony. 18 U.S.C. §

---

[1] Since Count 1 does not fall under the sentencing guidelines, a period of supervised release is not applicable, and the defendant may become eligible for parole as to that count.

[2] The amount of loss in the pre-guideline count was included as Relevant Conduct in arriving at the total loss figure on which the guideline enhancement is based. This was considered in determining that the pre-guideline count was ordered to run concurrently with regard to the guideline count.

3559(a)(1)(5). The authorized term of supervised release for a Class E felony is not more than a year. 18 U.S.C. § 3583(b)(3).

Therefore, pursuant to 18 U.S.C. § 3576 and 18 U.S.C. § 3583(b)(3), we vacate the lower Court's sentence of three years supervised release and amend the supervisory release term as to Count 2 to a one year term. See United States v. DiFrancesco, 449 U.S. 117, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980).

## III.

## CONCLUSION

We find Stokes's objection to the qualification of the expert witness meritless; and find the evidence sufficient. However, the trial court misinterpreted the guidelines when it ordered the two point increase for the use of sophisticated means. Further, we hold that the trial court clearly erred when it sentenced Stokes to a period of supervised release applicable to a Class D felony rather than to a Class E offense. Corrections of the error regarding the enhancement for sophisticated means by the trial court would not result in a change in the prison term.

We AFFIRM the conviction and sentence as to Count 1. We AFFIRM the conviction as to Count 2 and AMEND the sentence of supervised release to one year, and as amended AFFIRM the sentence in Count 2.

HIGGINBOTHAM, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's opinion except its holding that the district court erred in adjusting the offense level because sophisticated means were used to impede discovery of the nature or extent of the offense. Whether the means of Stokes were more than the planning of a routine tax-evasion case is a close question. To me there was no misinterpretation of the legal effect of the guidelines that we ought to examine de novo. Rather, this was a judgment call of whether means used were "sophisticated." I find no basis for upsetting this call and would affirm.

At its essence sentencing is inevitably an exercise of judgment. The guidelines guide but cannot supplant that judgment. Imposing our view in circumstances as these pretends an objective standard that does not exist. We assume a role in sentencing that Congress surely did not intend.

c:br:opin:92-3789p:jm/nb