**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 3, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL ALBERT MARSHALL,

Defendant - Appellant.

No. 05-6316

(W.D. Oklahoma)

(D.C. No. 05-CR-20-T)

### ORDER AND JUDGMENT[*]

Before **TACHA,** Chief Circuit Judge, **ANDERSON** and **BALDOCK**, Circuit
Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Following a jury trial, defendant-appellant Michael Albert Marshall was found guilty of one count of possession of counterfeit United States Federal Reserve notes with intent to defraud, in violation of 18 U.S.C. § 472. He was sentenced to forty-eight months' imprisonment, followed by three years of supervised release. He appeals on the sole issue of whether there was sufficient evidence establishing that he had the requisite intent to defraud. We affirm.

## BACKGROUND

In 2002, the United States Secret Service received information that there were counterfeit Federal Reserve notes circulating in Oklahoma City, Oklahoma. The Secret Service accordingly initiated an investigation. Acting on information gleaned from a confidential informant, on August 21, 2002, Oklahoma City police officers conducted a traffic stop of Steven Butler, also known as "Buccet Loc," and found he had over $500 in counterfeit Federal Reserve notes. Butler agreed to help law enforcement authorities in their investigation into counterfeit currency and told authorities that Marshall was the source of the counterfeit notes he possessed and that Marshall had additional counterfeit currency in excess of $10,000.

Butler then accompanied police officers as they drove to Marshall's residence. They observed Marshall leave his residence in a car and drive to a

hotel. The authorities then had Butler contact Marshall to negotiate a controlled delivery of $10,000 in counterfeit money to be exchanged for real money. The officers placed Marshall under surveillance and observed him drive to his house, go into his house for approximately five minutes, depart his house and drive off in his car. A few minutes later, some time after midnight on August 22, 2002, other Oklahoma City police officers, who had been alerted to watch for Marshall's car, conducted a traffic stop of Marshall and found $10,730 in counterfeit currency on his person.

Officers then obtained a search warrant for Marshall's house and found an additional $29,880 in counterfeit currency in a dog food bag in a detached garage. A few hours after the traffic stop, Oklahoma City police officers and a Secret Service Special Agent interviewed Marshall. Marshall confessed to possessing the counterfeit currency and stated that no one else in his house knew about it. He further stated that he was involved in the rap music industry as a producer/mixer/engineer for Butler. Marshall also stated he had intended to use the counterfeit money as "flash money," and that he also used it in drug deals with Mexicans, whereby he bought drugs with the counterfeit currency and the Mexicans were "unaware of the counterfeit until it crosses the border." Tr. of Trial at 54, R. Vol. 2; see also id. at 71-73.

Marshall was accordingly indicted on one count of possessing, with intent to defraud, approximately $40,610.00 in counterfeit money. Marshall argued at his trial that, while he did possess the counterfeit money, he did not have the intent to defraud.[1] The sole issue on appeal is whether there was sufficient evidence of intent to defraud to support the jury's guilty verdict.

## DISCUSSION

"Sufficiency of the evidence to support a jury's verdict is a legal issue we review de novo." United States v. Lauder, 409 F.3d 1254, 1258 (10th Cir. 2005). We examine the evidence "in the light most favorable to the government to determine whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. at 1259 (quoting United States v. Reece, 86 F.3d 994, 995-96 (10th Cir. 1996) (further quotation omitted)). "[W]e do not 'question the jury's credibility determinations or its conclusions about the weight of the evidence.'" Id. (quoting United States v. Lazcano-Villabos, 175 F.3d 838, 843 (10th Cir. 1999)). In this case, we focus only on the sufficiency of the evidence of intent to defraud.

---

[1] 18 U.S.C. § 472 imposes a fine or imprisonment for up to twenty years on anyone who "with intent to defraud[] . . . keeps in possession or conceals" counterfeit currency.

-4-

"[I]t is well settled that a general intent to defraud unknown third parties will suffice under" 18 U.S.C. § 472.  United States v. Wilkerson, 469 F.2d 963, 969 (5th Cir. 1972).  "Mere possession with knowledge of the counterfeit character of the currency will not suffice . . . ."  Id.; see also United States v. Bishop, 534 F.2d 214, 218 (10th Cir. 1976) ("It is fundamental that the naked act of possessing and passing counterfeit money without knowledge that it is counterfeit does not establish the requisite knowledge essential to the crime of passing or the requisite intent to defraud.").  However, "[b]ecause it is difficult to prove intent to defraud from direct evidence, a jury may consider circumstantial evidence of fraudulent intent and draw reasonable inferences therefrom."  United States v. Bailey, 327 F.3d 1131, 1140 (10th Cir. 2003).  Thus, "the jury has the right to evaluate the overall actions of a person charged [with violating 18 U.S.C. § 472], and knowledge and intent may be inferred therefrom."  Bishop, 534 F.2d at 218.

"A variety of circumstantial evidence has been held relevant to infer fraudulent intent.  Intent may be inferred from evidence that the defendant attempted to conceal activity.  Intent to defraud may be inferred from the defendant's misrepresentations . . . ."  United States v. Welch, 327 F.3d 1081, 1105 (10th Cir. 2003) (further quotation omitted).  Additionally, "evidence of passing or attempting to pass similar counterfeit notes on other occasions" may be

relevant to show intent. Holt v. United States, 404 F.2d 914, 920 (10th Cir. 1968). Further, "intent may be inferred from the segregation of genuine from counterfeit money." United States v. Tucker, 820 F.2d 234, 236 (7th Cir. 1987).

We find there is sufficient evidence in the record from which a reasonable jury could find that Marshall had the requisite intent to defraud. Butler testified that, in the weeks leading up to his and Marshall's arrests, he was "financially . . . drained." Tr. of Trial at 114, R. Vol. 3. Marshall accordingly gave Butler approximately $1000 in counterfeit money, which he told Butler not to use in stores. Butler testified, however, that Marshall knew "that [Butler] intended to use [the counterfeit money] to pay [for his] room," id. at 118, and for "daily expenses." Id. at 151. Butler stated he told Marshall "that's what [he] needed" and Marshall did not object. Id.

Butler further testified that he arranged the controlled buy from Marshall by telling Marshall he "had a lucrative opportunity . . . to make some money." Id. at 120. He further stated that the arrangement was "to sell some of the counterfeit to a third party," id., and that Marshall "was aware of that." Id. at 121. Butler testified that both he and Marshall knew that the deal would be "lucrative." Id. at 154.

Butler also testified about the necessity in the music industry of appearing to have lots of cash: "it look[s] better if you have cash," and "it [is] important

-6-

that [Butler] . . . have flash money, that is, money that people could see to make [him] look like [he] w[as] doing very well." Id. at 126. Thus, if an individual had "flash cash, . . . people would look at it or construe it as if they would definitely have to pay [him] by a certain pay scale." Id. He admitted that using the counterfeit money as "flash cash" was "deceptive." Id. at 152. Besides enabling Butler to use "flash cash," Marshall admitted to authorities that he used the counterfeit money as "flash cash" as well.

In sum, there was evidence from which a reasonable jury could conclude that Marshall had the requisite intent to defraud. Butler suggested that both he and Marshall, as participants in the music industry, intended to use the counterfeit "flash cash" to misrepresent their financial situation. Marshall agreed to a "lucrative" sale of counterfeit money to some third party, which would release his counterfeit money into the public and benefit Marshall. Marshall knew of and condoned Butler's use of the counterfeit money to pay certain living expenses, including his hotel bill, on an ongoing basis. Marshall admitted to defrauding Mexican drug dealers with the counterfeit money on prior occasions. And, Marshall's placement of the counterfeit money in a dog food bag, away from any legitimate money at his residence, indicated he wished to keep the existence of the counterfeit money hidden from others. A reasonable jury could certainly find therefrom an intent to defraud.

## CONCLUSION

For the foregoing reasons, we AFFIRM Marshall's conviction.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge