[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-13286
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 20, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-60144-CR-JAG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID SEARS,
DENSIL JONES,
a.k.a. Densil Rolle,

Defendant-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(June 20, 2005)

Before ANDERSON, HULL and WILSON, Circuit Judges.

PER CURIAM:

Densil Jones was convicted of the following offenses: conspiring to possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846; possessing with the intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(ii); and conspiring to launder money in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (B)(i), and (h). He was sentenced to 188 months of imprisonment and five years of supervised release. David Sears was also convicted of conspiring to possess with intent to distribute five kilograms or more of cocaine and conspiring to launder money. In addition, Sears was convicted of maintaining a dwelling for the purpose of distributing or using marijuana and cocaine in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2; possessing with intent to distribute at least 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii) and 18 U.S.C. § 2; and laundering money in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), B(i), and 2. Sears was sentenced to life in prison and ten years of supervised release.

Both Jones and Sears argue on appeal that the district court erred in denying their motions to suppress evidence. Jones also argues that the district court abused its discretion by refusing to grant Defendants additional peremptory challenges during voir dire and by denying his motion for a mistrial based on the prosecutor's

2

comments during closing arguments.

## I. Facts and Procedural Background

At around 7:00 a.m. on June 20, 2003, Broward County Sheriff's officers were conducting surveillance and preparing to execute a search warrant on Defendant Sears' house in Lauderhill, Florida. The warrant authorized a search not only of the house and its contents but also a search of all people connected therewith and of all vehicles within the curtilage. At approximately 11:00 a.m., a vehicle approached the house. Sears walked outside and spoke with the driver, who handed him a white plastic bag that was weighed down with brick-like objects. Sears took the bag into his house.

Thirty minutes later Sears came back outside, got into his car, and began to drive away. Sergeant Nathan Osgood pulled his vehicle behind Sears' and flashed his blue lights. Sears stopped approximately 100 feet from his house. Osgood, wearing a black police raid shirt and his badge, approached the car and told Sears that the police were getting ready to execute a search warrant for narcotics at Sears' house. Osgood said the police officers could perform a "hard" entry by breaching the door or a "soft" entry if Sears would give them a key. Sears responded by saying "You got me. I got one . . . under the bed." When asked what he meant, Sears replied that he had a kilogram of cocaine under his bed. At

3

that point, Osgood asked Sears to stop talking and read him his <u>Miranda</u> rights, which Sears agreed to waive. Officers then handcuffed Sears and led him to a secure location.

Using the key provided by Sears, officers entered the house and conducted a search using a trained narcotics dog. The dog located a bag containing a kilogram of cocaine under the bed in the master bedroom. Officers also found $40,900 in currency in a white plastic bag and another $365,000 in a duffel bag.

During the search, Osgood brought Sears back to the house. Sears informed the officers that his supplier would be arriving shortly and advised them to move their cars. Sears subsequently received a call on his cell phone. Recognizing the number as that of his supplier, Sears answered the phone and held it so that the officers could listen in on the call. The caller, who had a Caribbean accent, asked if everything was okay, saying he had seen a car with two white men in it parked in front of Sears' house. Sears assured the caller that everything was fine and that the men in the car were his neighbors. The caller then said that he would "come over and bring [Sears] five."

Within two minutes of that phone call, a minivan pulled into Sears' driveway. Sears informed the officers that the driver was his supplier. Osgood radioed his team, and police vehicles pulled into the driveway behind the van.

Defendant Jones was alone in the van. Jones was detained while officers walked a narcotics dog around the van. The dog led the officers to discover a duffel bag containing fifteen kilograms of cocaine in the back of the van. At some point during this process, officers advised Jones of his <u>Miranda</u> rights and formally placed him under arrest.

Prior to trial, Sears and Jones moved to suppress the evidence that the officers collected during the June 20 search. Sears argued that the officers lacked reasonable suspicion to stop his car and that all subsequently discovered evidence was fruit of the poisonous tree. Jones similarly argued that there was no lawful grounds for the officers to stop him or search his vehicle. The district court denied the motions after a hearing.

At the start of the jury selection process, the district court informed the parties that the government would be given seven peremptory challenges and Defendants would collectively receive twelve. Defendants used three of their peremptory challenges on jurors that they had unsuccessfully attempted to challenge for cause. After exhausting their peremptory challenges, Defendants requested that the court grant them more so that they could strike Ms. Magaly Martz, a juror against whom they admittedly had no challenge for cause. The court denied this request, and Ms. Martz was seated as the twelfth juror.

During trial, government witnesses testified to the facts as described above.

Defendants offered no evidence. During closing arguments, one of the

prosecutors said the following:

> What did David Sears tell you? David Sears said that he had been
> doing this over approximately a six months time, and that's why we
> started this indictment. Incidentally, the conspiracy we [sic] started
> in January. The judge is going to tell you on or about, and the
> indictment says "on or about." We don't know the exact date.
> Nobody knows. Somebody does, but we don't. We don't know the
> exact date. On or about is fine.

Jones objected to this statement and moved for a mistrial on the grounds that the

statement constituted an improper comment on the evidence.[1] The district court

denied the motion.

## II. Standards of Review

This court reviews the denial of a motion to suppress under a mixed

standard, reviewing the district court's findings of fact for clear error and its

application of law to those facts <u>de</u> <u>novo</u>. <u>United States v. Floyd</u>, 281 F. 3d 1346,

1348 (11th Cir. 2002). We review the district court's distribution of peremptory

challenges and its denial of a motion for a new trial for an abuse of discretion.

<u>United States v. Romero</u>, 780 F.2d 981, 984 (11th Cir. 1986); <u>United States v.</u>

---

[1] On appeal, Jones abandons his improper comment on the evidence argument, instead arguing that the prosecutor was improperly remarking on Defendants' assertion of their Fifth Amendment rights.

Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003).

### III. Discussion

A. The Motions to Suppress

Sears argues that he was seized in violation of the Fourth Amendment because the officers who stopped his car lacked probable cause to do so.[2] This argument misses the mark. Because the officers had a valid warrant to search Sears' home, they had a basis to detain him during the search. See Michigan v. Summers, 452 U.S. 692, 705 101 S. Ct. 2587, 2595 (1981) ("[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."). Whether the officers had probable cause to pull Sears over independently of the search warrant is irrelevant.

We find the facts of this case to be virtually indistinguishable from those in United States v. Cochran, 939 F.2d 337 (6th Cir. 1991). In Cochran, as in this case, police officers were preparing to execute a search warrant at the defendant's home when the defendant got into his car and drove away. Id. at 338. Believing it better to enter the defendant's home with his cooperation than forcibly, the officers

---

[2] Sears also argues at length that the officers searched his car in violation of the Fourth Amendment. This argument is a red herring, as Sears points to no evidence produced by the alleged unconstitutional search of his vehicle.

stopped the defendant's car and requested his assistance in entering the house. Id.

Relying on Summers, the Sixth Circuit held that the detention was proper even

though it occurred a short distance from the defendant's home. Id. at 339. We

agree with the Sixth Circuit that no constitutional violation occurs when officers

who are preparing to serve a valid search warrant stop and detain an individual

who is in the process of leaving the premises to be searched. That the stop does

not occur on the premises to be searched is irrelevant so long as the officers detain

the individual as soon as practicable after his departure. See id. Because no

constitutional violation occurred, the district court correctly denied Sears' motion

to suppress evidence obtained as a result of his seizure.

In the alternative, we conclude that there was ample justification to stop

Sears' vehicle. The combination of the information possessed by the officers as

support for the search warrant and their observations of Sears' actions immediately

prior to the stop constituted probable cause to believe Sears was involved in

possession and/or trafficking of cocaine.

Jones also argues that the police lacked probable cause or even a reasonable

suspicion to stop and search his person and vehicle. We disagree. The officers

were executing a valid search warrant that allowed them to search Sears' home and

all vehicles located on its curtilage. Once Jones pulled his van into Sears'

8

driveway, his vehicle was located on the curtilage. It was therefore subject to search under the terms of the warrant. Because the search of Jones' vehicle was valid, the district court correctly denied Jones' motion to suppress the resulting evidence. In the alternative, there was ample probable cause to arrest Jones and search his vehicle.

B. <u>The Peremptory Challenges</u>

The Federal Rules of Criminal Procedure provide that, in a non-capital felony case, the government is entitled to six peremptory challenges and the defendants are collectively entitled to ten. Fed. R. Crim. P. 24(b)(2). The court has discretion to allow additional challenges or to allow defendants to exercise their challenges separately or jointly. Fed. R. Crim. P. 24(b). While the district court gave Defendants in this case two more peremptory challenges than the law required, Jones argues that the number was still insufficient. In support of this argument, he notes that Defendants were forced to use peremptory challenges against three jurors after their challenges for cause were denied.

We first note that Jones does not challenge the district court's rulings on the three cause challenges in question. However, even if he had done so, "a defendant's exercise of peremptory challenges pursuant to Rule 24(b) is not denied or impaired when the defendant chooses to exercise a peremptory challenge to

remove a juror who should have been removed for cause." United States v. Martinez-Salazar, 528 U.S. 304, 120 S. Ct. 774 (2000). Jones' ability to exercise peremptory challenges was in no way impaired in this case, and the district court did not abuse its discretion by declining to grant additional challenges.

C. The Closing Arguments

Jones finally argues that the district court erred in not granting a mistrial in response to the prosecutor's statement during closing arguments that "somebody" knew the exact starting date of the conspiracy. He alleges that this constituted improper commentary on Defendants' decision to exercise their Fifth Amendment rights.[3] A prosecutor's statement only violates a defendant's Fifth Amendment right to remain silent if it was (1) "manifestly intended to be a comment on the defendant's failure to testify;" or (2) "of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Isaacs v. Head, 300 F.3d 1232, 1270 (11th Cir. 2002). The prosecutor's comment in this case clearly does not rise to this level. Taken in context, the comment was likely no more than an attempt to explain to the jury why the indictment used the phrase "on or about" when describing the start date of the

---

[3] As noted above, Jones initially claimed that the remark constituted an improper comment on the evidence. This line of argument has been abandoned on appeal.

charged conspiracy. The district court certainly did not abuse its discretion in denying the motion for a mistrial on the basis of the prosecutor's statement.

## IV. Conclusion

For the foregoing reasons, the district court's decision in this case is AFFIRMED.