[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUL 06, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-10618

_____

D. C. Docket No. 04-20716-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESUS TAMARI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 6, 2006)**

Before BLACK, BARKETT and COX, Circuit Judges.

BLACK, Circuit Judge:

Appellant Jesus Tamari appeals his conviction for conspiracy to possess with the intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Tamari argues the district court erred in denying his motion to suppress evidence and statements obtained during two unlawful searches of his vehicle. For the reasons set forth more fully below, we affirm.

## I. BACKGROUND

In early 2003, federal, state, and local law enforcement agents began conducting an investigation into a large-scale conspiracy in south Florida to harvest and distribute controlled substances. The agents had reason to believe the organization was run by an individual named Humberto Febles, who owned a yellow Hummer that he used in the conspiracy. During the course of the investigation, a confidential informant alerted authorities to several properties the organization used to cultivate and house various controlled substances. Pursuant to this information, agents obtained a warrant to search a parcel of rural, isolated property located at 17540 Southwest 254th Street in Miami, Florida. The warrant authorized agents to search the property, including "[v]ehicles or vessels or trailers registered to or owned by the occupants of the place to be searched, or under the care, custody or control or on the property on which the place to be searched is situated."

Between 7:30 a.m. and 8:00 a.m. on September 1, 2004, agents arrived at 17540 Southwest 254th Street, whereupon they served the search warrant and proceeded to execute the warrant by conducting the search. Upon entering the residence on the property, they arrested three individuals: Roberto Cano, Marta Gonzalez, and Rudolfo Aguilera. The agents then searched the residence and seized cocaine, drug paraphernalia, cash, and a number of loaded weapons. Soon thereafter, agents searched a Freightliner truck parked on the property, finding slightly less than 13 kilograms of cocaine and stacks of cash totaling $536,421.

Approximately 30 minutes to one hour after combing the Freightliner truck, while the search was still in progress, Tamari drove onto the property in a yellow Hummer. He approached Special Agent Debra Crane, who was standing in the driveway, and began to speak in Spanish. Agent Crane, not fluent in Spanish, called for assistance from Detective Jorge Rodriguez, who asked for Tamari's name, identification, and his purpose for being on the property. Exiting the Hummer, Tamari responded with a name, but was unable to produce any identification or vehicle registration. Tamari then told agents the vehicle belonged to a family member, but later claimed it belonged to an individual named Humberto, who loaned him the vehicle in exchange for Tamari's Honda Accord. He also said he was on the premises to see a man about some animals, but it appeared there were no animals on the property.

3

Agent Crane then searched the car, looking for its registration or any indicia of ownership. After searching the glove compartment, center console, and pockets in the driver and passenger doors, Agent Crane briefly scanned the rear cargo area. She neither found nor seized any evidence during this search. Shortly thereafter, agents ran a narcotics detection dog, Ho Jo, around the perimeter of the Hummer. Ho Jo gave a positive alert to a wheel well compartment in the rear cargo area, in which agents found around $45,000 in cash. Agents then searched the Hummer again, finding and seizing documents concerning Roberto Cano, photographs of Roberto Cano, a key to the Freightliner truck, calling cards, and gold jewelry.

Tamari was subsequently arrested and charged with (1) conspiring to possess with the intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) possessing with the intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).

Before trial, Tamari moved the district court to suppress physical evidence obtained during the searches of the Hummer. Tamari also moved to suppress statements he made during those searches, arguing they were the product of unlawful searches and thus inadmissible "fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407 (1963). The district court held a preliminary hearing and denied the motion, concluding the vehicle was subject to search under the warrant's authorization to search "[v]ehicles . . . on the property

4

on which the place to be searched is situated." Alternatively, the district court found that even if the search warrant did not justify the searches, sufficient probable cause existed to permit warrantless searches of the Hummer.

The jury convicted Tamari of conspiring to possess with the intent to distribute a controlled substance. He was acquitted on the remaining count. Tamari now appeals his conviction, arguing the district court erred by denying his motion to suppress evidence and statements obtained during the September 1, 2004, vehicle searches.[1]

## II. STANDARD OF REVIEW

"We apply a mixed standard of review to the denial of a defendant's motion to suppress, reviewing the district court's findings of fact for clear error and its application of law to those facts de novo." *United States v. Lyons*, 403 F.3d 1248, 1250 (11th Cir. 2005).

## III. DISCUSSION

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

---

[1] After carefully considering the other arguments raised on appeal, we conclude they are without merit and do not discuss them. Moreover, because the parties do not dispute the lawfulness of any traffic stop in this case, we confine our discussion to the propriety of the September 1, 2004, searches of the Hummer.

U.S. Const. amend. IV. This fundamental right is generally preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer upon a showing of probable cause. *See Maryland v. Dyson*, 527 U.S. 465, 466, 119 S. Ct. 2013, 2014 (1999). There are, of course, exceptions to the general rule that a warrant must be secured before a search is undertaken, one of which is the automobile exception. Under the automobile exception, agents may conduct a warrantless search of a vehicle if (1) the vehicle is readily mobile (i.e., operational); and (2) agents have probable cause to believe the vehicle contains contraband or evidence of a crime. *See Dyson*, 527 U.S. at 466-67, 119 S. Ct. at 2014; *United States v. Watts*, 329 F.3d 1282, 1285 (11th Cir. 2003).

Accordingly, a vehicle search will not violate the Fourth Amendment if it is authorized by the terms of a valid search warrant or, where agents conduct a warrantless search, if the vehicle is operational and "under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found'" in the vehicle. *United States v. Goddard*, 312 F.3d 1360, 1363 (11th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)).

On appeal, Tamari first argues the vehicle searches in this case were unlawful because they fell outside the scope of the search warrant. Relying

primarily on *United States v. Gentry*, 839 F.2d 1065 (5th Cir. 1988), Tamari asserts the search warrant did not authorize agents to search vehicles arriving on the subject property during the course of the agents' search. Second, Tamari argues the vehicle searches were unconstitutional under *Ybarra v. Illinois*, 444 U.S. 85, 100 S. Ct. 338 (1979), because the Hummer's mere presence on the subject property did not give agents sufficient probable cause to search the vehicle without a warrant. Third, Tamari argues the search warrant did not encompass the vehicle searches because under *United States v. Patterson*, 278 F.3d 315, 318-19 (4th Cir. 2002), the warrant's authorization to search vehicles on the property extended only to those vehicles "owned by or under the dominion and control of the premises' owner." Because he did not own the subject property, Tamari asserts the search warrant did not authorize the search of his vehicle. Tamari concludes, therefore, the vehicle searches in this case were unlawful, and the district court should have suppressed the evidence seized and statements made during those searches.[2]

A.      *Search Warrant*

---

[2] We will not discuss Tamari's third argument because in *United States v. Cole*, 628 F.2d 897, 899 (5th Cir. 1980) the former Fifth Circuit held that a search warrant authorized the search of a third party's truck on the property covered by the search warrant. *See also Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

Tamari does not dispute that the Hummer could have been searched under the terms of the search warrant had it been located on the subject property at the time the warrant was served. *See United States v. Cole*, 628 F.2d 897, 899-900 (5th Cir. 1980). Rather, relying primarily on *United States v. Gentry*, 839 F.2d 1065 (5th Cir. 1988), Tamari asserts the search warrant did not authorize agents to search vehicles arriving on the subject property later, after the search had already begun. We lack published authority in this Circuit as to whether a valid search warrant[3] authorizing the search of vehicles on the subject property encompasses the search of a vehicle arriving on that property during the course of the search.[4] We are not, however, without guidance on this issue. In *United States v. Alva*, 885 F.2d 250 (5th Cir. 1989), the Fifth Circuit passed on the precise question presented here.

In *Alva*, a search warrant authorized officers to search the house, structures, and "any and all motor vehicles found parked" on the subject property. *Id.* at 251. While the search was being conducted, Alva drove onto the property in a pickup truck. *Id.* Officers searched the vehicle, seizing the semiautomatic pistol that

---

[3] Tamari does not challenge the validity of the search warrant in this case. Thus, we need only address whether the search warrant authorized agents to search the Hummer.

[4] We answered this question in the affirmative in *United States v. Sears*, 139 Fed. Appx. 162, 166 (11th Cir. 2005). As an unpublished opinion, however, *Sears* lacks precedential authority and does not bind this Court. *See* 11th Cir. R. 36-2; *Summers v. Dillard's, Inc.*, 351 F.3d 1100, 1101 n. 1 (11th Cir. 2003).

would eventually form the basis for Alva's felon-in-possession conviction under 18 U.S.C. § 922(g)(1). *Id.* The district court denied Alva's motion to suppress the pistol, finding as a "motor vehicle[] found parked" on the property, Alva's pickup truck was subject to search under the terms of the warrant. *Id.*

Like Tamari, Alva argued on appeal that the search warrant did not authorize the search of his vehicle. He reasoned that "the warrant language requiring search of 'any and all vehicles found on the premises . . .' did not encompass vehicles, such as his, that arrived at the premises after the police had begun searching." *Id.* Because "the police had no probable cause to search his vehicle independent from the warrant," Alva asserted "the search was illegal," and the resulting evidence should have been suppressed. *Id.* at 252.

The Fifth Circuit disagreed. The *Alva* court emphasized that the "approach of exercising reasonableness in warrant construction [applies] to timing aspects of warrant execution." *Id.* The court then held, in relevant part:

> The search of Alva's pickup truck pursuant to warrant language authorizing the search of "any and all motor vehicles found parked on the premises . . ." was within the scope of the warrant. Alva's reading of the language, that it prohibits police from searching vehicles arriving after the search begins, unnaturally cramps the warrant's temporal authority. Searches do not take place in an instant; they occur over a period of time, sometimes many hours. Thus vehicles arriving during the course of a search are vehicles "found parked" on the premises if they reasonably could contain the items for which law enforcement officials are searching. Alva's pickup truck was such a vehicle.

9

*Id.*

We agree with the Fifth Circuit. A valid search warrant authorizing the search of vehicles on the subject property permits the search of vehicles arriving on that property during the course of the search, so long as those vehicles could reasonably contain items the officers are searching for. In this case, like *Alva*, a valid search warrant allowed agents to search "[v]ehicles . . . on the property on which the place to be searched is situated." After agents served and proceeded to execute the search warrant, Tamari drove a Hummer onto the subject property. The Hummer, moreover, reasonably could have contained items agents sought in the search warrant, including documents, account books, currency, jewelry, firearms, and drug paraphernalia. As a result, the vehicle searches in this case, conducted pursuant to warrant language authorizing the search of vehicles "on the property on which the place to be searched is situated," were within the scope of the search warrant.

To support his argument to the contrary, Tamari relies primarily on the Fifth Circuit's decision in *United States v. Gentry*, 839 F.2d 1065 (5th Cir. 1988). His reliance is misplaced, however, because *Gentry*'s holding is irrelevant to this case. In *Gentry*, the court limited its analysis to defining the physical boundaries of the search warrant in question. *See id.* at 1068-69. The physical scope of the warrant's authority is not at issue in this case, however, because it is beyond

dispute that the Hummer was on the subject property, and thus within the warrant's physical boundaries, at the time of the searches. The question presented here is the warrant's temporal authority and, more specifically, whether agents may search vehicles arriving on the subject property during the course of a search conducted pursuant to a valid search warrant. The *Gentry* court expressly withheld judgment on that issue. S*ee id.* at 1069. Indeed, the Fifth Circuit answered the question in the affirmative the next year in *Alva*, which we follow here.

We hold, therefore, that the September 1, 2004, vehicle searches were authorized by the terms of the search warrant. Consequently, the searches were lawful under the Fourth Amendment, and the district court did not err in denying Tamari's motion to suppress the resulting evidence and statements.[5]

B.     *Automobile Exception*

Tamari next argues the vehicle searches were unconstitutional under *Ybarra v. Illinois*, 444 U.S. 85, 100 S. Ct. 338 (1979), because the Hummer's mere presence on the subject property did not give agents sufficient probable cause to search the vehicle without a warrant. We disagree and hold that even if the vehicle searches did not fall within the scope of the search warrant, the warrantless

---

[5] Because the vehicle searches were lawful, we need not address Tamari's argument that statements he made during those searches should have been suppressed as fruit of the poisonous tree under *Wong Sun v. United States*.

searches of the Hummer were nonetheless lawful under the automobile exception to the Fourth Amendment's warrant requirement.

Again, the automobile exception permits warrantless vehicle searches if the vehicle is operational and agents have probable cause to believe the vehicle contains evidence of a crime. *See Dyson*, 527 U.S. at 466-67, 119 S. Ct. at 2014; *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005). Probable cause, in turn, exists when under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found" in the vehicle. *Goddard*, 312 F.3d at 1363 (quotation omitted). Because there is no dispute that the Hummer was operational, our inquiry is limited to determining whether sufficient probable cause existed to allow warrantless searches of the vehicle.

First, we hold Agent Crane had probable cause to conduct the initial search of the Hummer. Agents were searching a parcel of rural, isolated property they had probable cause to believe was part of a large-scale drug conspiracy. After they seized cocaine, cash, and firearms on the premises, a yellow Hummer drove onto the property, the same type of vehicle agents suspected was driven by Humberto Febles, the head of the drug conspiracy. In fact, when Tamari changed his story regarding the vehicle's owner, he claimed a man named Humberto loaned him the Hummer. Upon request, Tamari was unable to produce any identification or vehicle registration. Further, when asked about his purpose on the property,

12

Tamari proffered the untenable explanation that he was there to see a man about some animals.  Given the totality of these circumstances, a reasonable agent could deduce with fair probability that the Hummer contained contraband or evidence of a crime.  *See, e.g., Chambers v. Maroney*, 399 U.S. 42, 47-48, 52, 90 S. Ct. 1975, 1979, 1981 (1970) (noting "obviously [there was] probable cause to search the car" when officers had a description of the suspects and the vehicle they drove).  Agent Crane, therefore, had sufficient probable cause to search the Hummer.

Second, agents had probable cause to search the Hummer once more after Ho Jo, the narcotics detection dog, circled the vehicle.  Along with the facts establishing probable cause for Agent Crane's initial search, Ho Jo sniffed the Hummer and alerted agents to the presence of narcotics in the rear of the vehicle.[6]  We have long recognized that "probable cause arises when a drug-trained canine alerts to drugs."  *United States v. Banks*, 3 F.3d 399, 402 (11th Cir. 1993); *see also United States v. Dunkley*, 911 F.2d 522, 527 (11th Cir. 1990); *United States v. Puglisi*, 723 F.2d 779, 783 (11th Cir. 1984).  Notwithstanding the facts validating the initial search, Ho Jo's positive alert was itself sufficient to give agents probable cause to search the Hummer a second time.

---

[6] We need not address whether agents had cause to walk Ho Jo around the perimeter of the vehicle because a drug sniff performed during a lawful traffic stop is not a search implicating Fourth Amendment concerns.  *See Illinois v. Caballes*, 543 U.S. 405, 410, 125 S. Ct. 834, 838 (2005).

Thus, even if the search warrant had not justified the vehicle searches in this case, we find the agents were entitled to search the Hummer under the automobile exception to the warrant requirement. The district court, therefore, did not err in denying Tamari's motion to suppress the resulting evidence and statements.[7]

## IV. CONCLUSION

In sum, we hold the Hummer was subject to search under the terms of the search warrant. In the alternative, agents were entitled to search the Hummer without a warrant under the automobile exception to the warrant requirement. The district court, therefore, did not err in admitting evidence and statements obtained during the September 1, 2004, vehicle searches. We accordingly affirm Tamari's conviction.

AFFIRMED.

---

[7] *See supra* note 5.