[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12154
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 22, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00256-CR-J-32-HTS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

QUINTIN TYRONNE ANDERSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 22, 2010)

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Quintin Tyronne Anderson appeals his conviction for possession of a

firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On May 2, 2008, Deputy Shawn Emert of the St. Johns County Sheriff's Office stopped Anderson's vehicle after he observed a severe crack in the vehicle's windshield. While Deputy Emert cited Anderson for the traffic violation, Deputy George Gazdick arrived at the scene with narcotics detection dog, Aron. Aron alerted to the odor of narcotics in Anderson's vehicle. After Aron alerted, deputies searched Anderson's vehicle and found a .38 caliber revolver, ammunition, and a small amount of drugs. On appeal, Anderson challenges the district court's denial of his motion to suppress the physical evidence seized by the police. Anderson argues that the court erred in denying his motion to suppress the contraband found in his vehicle for two reasons: (1) that Deputy Emert lacked probable cause for the initial traffic stop, and (2) that Aron was not reliable.

In reviewing the denial of a motion to suppress evidence, we accept the district court's findings of fact unless they are clearly erroneous and consider the district court's application of the law to the facts *de novo*. *United States v. Gil*, 204 F.3d 1347, 1350 (11th Cir. 2000) (per curiam). In this case, we construe the facts in the light most favorable to the government. *United States v. Hromada*, 49 F.3d 685, 688 (11th Cir. 1995) (citation omitted). "We accord great deference to the

2

district court's credibility determinations." *United States v. Clay*, 376 F.3d 1296, 1302 (11th Cir. 2004) (citation and quotation omitted).

I.    *Traffic Stop*

Under Florida law, a police officer can stop a vehicle for a cracked windshield only if the officer reasonably believes that the crack renders the vehicle in such unsafe condition as to endanger any person or property. Anderson asserts that Deputy Emert was equivocal about whether he stopped Anderson for faulty equipment or because the vehicle was unsafe. He also contends that Deputy Emert did not specify why the crack rendered the windshield unsafe and impermissibly relied on Florida's faulty equipment statute to stop Anderson. Further, Anderson argues that the photographic exhibits of the windshield presented at the suppression hearing were inadequate to establish probable cause for the stop.

The Fourth Amendment protects individuals from "unreasonable searches and seizures" by government officials, "and its protections extend to brief investigatory stops of persons or vehicles." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750 (2002) (citation and quotation omitted). A decision to stop a vehicle is reasonable under the Fourth Amendment when an officer has "probable cause to believe that a traffic violation occurred." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) (citation omitted). The standard for

3

determining whether probable cause exists "is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (citation and quotation omitted). In *Hilton v. State*, the Florida Supreme Court clarified that "a stop for a cracked windshield is permissible only where an officer reasonably believes that the crack renders the vehicle 'in such unsafe condition as to endanger any person or property.'" 961 So. 2d 284, 292 (Fla. 2007) (quoting Fla. Stat. § 316.610).

Deputy Emert's testimony that he stopped Anderson for faulty equipment did not conflict with his testimony that he stopped Anderson for safety reasons. Furthermore, photographs submitted during the hearing displayed the size of the crack in the windshield. Therefore, the district court did not clearly err in finding Deputy Emert credible. As a result, it properly concluded that Deputy Emert's testimony, coupled with the photographs of the windshield, established probable cause to believe that Anderson had committed a traffic violation. Consequently, the traffic stop was permissible.

II.     *Reliability of Narcotics Detection Dog*

Anderson also contends that the officers who searched his vehicle lacked probable cause to search for narcotics because the canine Aron was trained to detect the *odor* of narcotics, not the *presence* of narcotics. Anderson argues that because the dog was trained to detect the odor of drugs, which may or may not be present, there is no reliable way of knowing whether contraband is actually present. Specifically, he asserts that in 44.9% of the searches conducted by Deputy Gazdick and Aron, an alert resulted in no discovery of measurable amounts of contraband. He maintains that the mere fact of training and certification, combined with an alert, is insufficient to support probable cause. The Fourth Amendment requires that to search a car without a warrant, a law enforcement officer must have probable cause to believe it contains contraband. *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S. Ct. 2485, 2487 (1996) (citation omitted) (per curiam). In the case of narcotics dogs, "[o]ur circuit has recognized that probable cause arises when a drug-trained canine alerts to drugs." *United States v. Banks*, 3 F.3d 399, 402 (11th Cir. 1993) (per curiam); *see also United States v. Tamari*, 454 F.3d 1259, 1265 (11th Cir. 2006). Although Anderson is correct in noting that there have been other facts establishing probable cause in our canine alert cases, we have stated that a canine's "positive alert was itself sufficient to give agents probable cause to search the [vehicle]." *Tamari*, 454 F.3d at 1265. Similarly, in *United*

5

*States v. Steed*, we applied *Tamari* and held that a canine's positive alert outside a trailer gave officers probable cause to search the trailer. 548 F.3d 961, 975 (11th Cir. 2008) (per curiam) (citing *Tamari*, 454 F.3d at 1264–65).

While a dog sniff must be sufficiently reliable in order to establish probable cause, we have held in dicta "that training of a dog alone is sufficient proof of reliability." *United States v. Sentovich*, 677 F.2d 834, 838 n.8 (11th Cir. 1982) (citation omitted) (endorsing the view of the Tenth and First Circuits that training of a dog alone is sufficient proof of reliability); *see also United States v. Robinson*, 390 F.3d 853, 874 (6th Cir. 2004) (citation omitted) (holding that once certification is established, all other evidence goes to credibility); *United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995) (per curiam) (holding that a dog's past performance is not required for a finding of reliability). *But see Matheson v. State*, 870 So. 2d 8, 14 (Fla. 2d DCA 2003) (citation omitted) (holding that training and certification is insufficient to establish reliability, and that other factors, such as the dog's "track record," must be considered).

In another decision, we described a dog as a "highly trained and credentialed professional whose integrity and objectivity are beyond reproach," because it had graduated from the U.S. Canine Academy and Police Dog Training Center, had been certified by the National Narcotics Detector Dog Association, and was

6

described by one trainer as "probably one of the best dogs he had trained in the 23 years he had been doing it." *United States v. $242,484.00*, 389 F.3d 1149, 1159, 1165 (11th Cir. 2004).

There was extensive evidence concerning Aron's certification and training with Deputy Gazdick. In addition to this evidence, the government also provided proof of Aron's reliability by offering his field records into evidence. Even assuming Anderson's view of the statistics, Aron had a 55% accuracy rate in finding measurable amounts of drugs. "Absolute certainty is not required by the Fourth Amendment." *United States v. Johnson*, 660 F.2d 21, 23 (2d Cir. 1981) (per curiam) (holding that appellant's arguments regarding dog's detection of odor of drugs, rather than their presence, misconstrued the probable cause requirement). Probable cause requires "a *fair probability* that contraband or evidence of a crime will be found." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983) (emphasis added). Here, the district court did not err in determining that the narcotics detection dog's alert was reliable and gave rise to probable cause to search Anderson's vehicle. Accordingly, the district court did not err in denying Anderson's motion to suppress based on the canine's alert.

**AFFIRMED.**