[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-13588
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 9, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:09-cr-00059-JES-SPC-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DETRICK C. SMITH,

Defendant - Appellant.


_____

No. 10-13932
Non-Argument Calendar
_____

D.C. Docket No. 2:09-cr-00059-JES-SPC-1


UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

DETRICK C. SMITH,

                                                          Defendant - Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(December 9, 2011)

Before EDMONDSON, MARTIN and ANDERSON, Circuit Judges.


PER CURIAM:

Detrick Smith appeals his conviction for possession of a firearm by a convicted felon, 18 U.S.C. § 922(g), and the government cross-appeals Smith's 108-month sentence. Reversible error has been shown; we affirm Smith's conviction but vacate and remand for resentencing.

While on patrol a little after 1:00 a.m., Officer Aaron Campbell observed Smith's car twice swerve out of his lane and almost hit the curb and then make a "wide turn" into a lane reserved for oncoming traffic. Suspecting a drunk driver, Officer Campbell initiated a traffic stop and was soon joined by Officer Glenn Thompson and his K-9 "partner" Dusty. After checking Smith's driver's license and registration and investigating whether Smith had outstanding warrants, Officer

2

Campbell wrote Smith citations for failing to maintain a single lane and failing to wear a seatbelt. Officer Campbell then asked Smith and his two passengers to exit the car so Smith could sign the citations and so Dusty could do a free-air sniff of the outside of the car. Smith and his passengers stepped out of the car and -- 12 minutes after Smith was stopped and before Smith signed the citations -- Dusty alerted, indicating that he detected the scent of illegal drugs in the car. Officer Thompson searched the car and found crack cocaine and a handgun.

On appeal, Smith challenges the district court's denial of his motion to suppress.[1] He argues that (1) Officer Campbell lacked probable cause to stop his car; (2) Officer Campbell unreasonably prolonged the traffic stop when he asked Smith and his passengers to exit the car; and (3) no probable cause existed to search his car because the particular dog used was unreliable. In considering the district court's denial of a motion to suppress, we review the district court's findings of fact for clear error and its application of the law to the facts de novo. United States v. Nunez, 455 F.3d 1223, 1225 (11th Cir. 2006). We also construe

_____

[1]Smith also argues that the felon-in-possession statute, 18 U.S.C. § 922(g), is unconstitutional because Congress failed to define "commerce" as interstate or foreign commerce and because the statute exceeds Congress's power under the Commerce Clause. But, Smith concedes -- and we agree -- that these arguments are foreclosed by our decisions in United States v. Nichols, 124 F.3d 1265 (11th Cir. 1997), and United v. McAllister, 77 F.3d 387 (11th Cir. 1996).

the facts in the light most favorable to the prevailing party.  Id.

A traffic stop constitutes a "seizure" within the meaning of the Fourth Amendment's protection against "unreasonable searches and seizures." United States v. Lopez-Garcia, 565 F.3d 1306, 1313 (11th Cir.), cert. denied, 130 S.Ct. 1012 (2009).  It is well-established, however, that a police officer "may conduct a brief investigative stop of a vehicle . . . if the seizure is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct." Id.  In determining whether reasonable suspicion existed, we look at the totality of the circumstances from the perspective of an objectively reasonable police officer.  See Nunez, 455 F.3d at 1226.

Construing the facts in the light most favorable to the government, Officer Campbell saw Smith swerve out of his lane three times; Campbell suspected that Smith was intoxicated.  Because this suspicion was supported by specific articulable facts sufficient to cause an objectively reasonable officer to conclude that Smith was driving under the influence of alcohol or drugs, Officer Campbell was justified in making the initial traffic stop.  See Lopez-Garcia, 565 F.3d at 1313.

Once a legitimate traffic stop is made, an officer "may request a driver's license and vehicle registration, run a computer check, and issue a citation" so

long as the detention "last[s] no longer than is necessary to effectuate the purpose of the stop." United States v. Pruitt, 174 F.3d 1215, 1219-20 (11th Cir. 1999). When the duration of a traffic stop is "entirely justified by the traffic offense and the ordinary inquiries incident to such a stop," a simultaneous dog sniff of the car does not violate the Fourth Amendment. Illinois v. Caballes, 125 S.Ct. 834, 837 (2005) (explaining that no Fourth Amendment violation occurred when, during a 10-minute traffic stop, an officer walked a drug-sniffing dog around the outside of the car while another officer wrote a citation).

Although Smith contends that Officer Campbell asked him to exit the car solely to conduct the dog sniff, the district court found that Officer Campbell routinely asks drivers to exit their cars to sign citations, particularly if he suspects -- as he did in this case -- that the driver had been drinking. Nothing evidences that this factual finding was clearly erroneous. See Nunez, 455 F.3d at 1225. Thus, because the stop's 12-minute duration was justified by the "ordinary inquiries incident to such a stop," and Smith had not yet signed the citations when Dusty alerted on the car, the dog sniff did not violate the Fourth Amendment. See Caballes, 125 S.Ct. at 837.

We also reject Smith's argument that the officers lacked probable cause to search his car. Under the Fourth Amendment, an officer may search an

5

operational car without a warrant if he has probable cause to believe that the car contains contraband. United States v. Tamari, 454 F.3d 1259, 1264 (11th Cir. 2006). Probable cause "exists when under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found' in the vehicle." Id. And "[w]e have long recognized that 'probable cause arises when a drug-trained canine alerts to drugs'" even in the absence of other evidence. Id. at 1265.

That the dog alerted to the presence of drugs in Smith's car is undisputed. Smith contends that, because Dusty had a "false alert" rate of nearly 30% in the field, this dog was not sufficiently reliable to establish probable cause to search the car. While a dog sniff must be sufficiently reliable to establish probable cause, we have said "that training of a dog alone is sufficient proof of reliability." United States v. Sentovich, 677 F.2d 834, 838 n.8 (11th Cir. 1982) (endorsing the view of the First and Tenth Circuits); see also United States v. $242,484.00, 389 F.3d 1149, 1159, 1165 (11th Cir. 2004) (describing a police dog as "a highly trained and credentialed professional whose integrity and objectivity [were] beyond reproach" when the dog had graduated from the United States Canine Academy and Police Dog Training Center and had been certified by the National Narcotics Detector Dog Association). Here, the government presented evidence that Dusty

6

had completed a 450-hour patrol course and a 200-hour narcotics detection course, was certified by the National Police Canine Association in both areas, and received an additional 6 to 10 hours of training each week. Moreover, even considering Dusty's alleged 70% accuracy rate in the field, a positive alert would be sufficient to establish a "fair probability" that drugs would be found in the car. See Tamari, 454 F.3d at 1265. Based on this record, the district court did not clearly err in concluding that this dog was sufficiently reliable to establish probable cause to search Smith's car.

In its cross-appeal, the government argues that the district court erred in concluding that Smith's Florida conviction for felony battery, for which he received a 60-month sentence, was not a "violent felony" for purposes of the Armed Career Criminal Act ("ACCA"). We review de novo a district court's determination of whether a conviction qualifies as a "violent felony" under the ACCA. United States v. Canty, 570 F.3d 1251, 1254 (11th Cir. 2009). The ACCA requires a mandatory minimum 15-year sentence for a person convicted under 18 U.S.C. § 922(g) who has 3 prior federal or state convictions "for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). The term "violent felony" is defined as "any crime punishable by imprisonment for a term exceeding one year" that

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B).

Smith concedes that he has two prior felonies that qualify as predicate offenses under the ACCA. But he argues that his conviction for felony battery, in violation of Fla. Stat. § 784.041(1), was not a "violent felony." We disagree.[2] In determining whether Smith's prior conviction constitutes a violent felony, we apply a "categorical approach," looking "only to the fact of conviction and the statutory definition of the prior offense" and not to "the particularized facts disclosed by the record of conviction." United States v. Alexander, 609 F.3d 1250, 1253-54 (2010), cert. denied, 131 S.Ct. 1783 (2011). In doing so, we also "look to the way the crime is committed in the 'ordinary case.'" Id. at 1254. Under Florida law, a person commits felony battery if he "(a) [a]ctually and intentionally touches or strikes another person against the will of the other; and (b) [c]auses great bodily harm, permanent disability, or permanent disfigurement."

_____

[2]We also reject Smith's argument that an ACCA sentence would violate the Sixth Amendment and the principles announced in Apprendi v. New Jersey, 120 S.Ct. 2348 (2000): an argument foreclosed by Almendarez-Torres v. United States, 118 S.Ct. 1219 (1998). In addition, because both statutes at issue in this case are unambiguous, the rule of lenity is inapplicable. See United States v. Camacho-Ibarquen, 410 F.3d 1307, 1315 (11th Cir. 2005).

Fla. Stat. § 784.041(1) (emphasis added).

To qualify as a violent felony under the ACCA's "residual clause" the predicate crime must involve conduct that "presents a serious potential risk of physical injury to another." See 18 U.S.C. § 924(e)(2)(B)(ii). The crime must also be "similar in degree and kind to the offenses enumerated in the residual clause insofar as it involves purposeful, violent, and aggressive conduct." United States v. Lockley, 632 F.3d 1238, 1246 (11th Cir. 2011). Because Florida's felony battery statute requires that a defendant's conduct actually cause "great bodily harm, permanent disability, or permanent disfigurement," it follows that the underlying conduct must "present[] a serious potential risk of physical injury." See 18 U.S.C. § 924(e)(2)(B)(ii); Fla. Stat. § 784.041(1). Moreover, because the statute requires that the defendant intentionally touch or strike the victim with sufficient force to cause the requisite level of harm, felony battery -- as ordinarily committed -- involves purposeful, violent, and aggressive conduct similar to burglary, arson, extortion, or crimes involving the use of explosives. See Lockley, 632 F.3d at 1246.[3] We vacate and remand for resentencing under the ACCA.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

---

[3]Because we conclude that Smith's felony battery conviction qualifies as a "violent felony" under the ACCA's residual clause, we need not address whether it also qualifies under the elements clause.