[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 22, 2012
JOHN LEY
CLERK

No. 11-10675
_____

D.C. Docket No. 2:09-cr-00048-WHA-TFM-1

UNITED STATES OF AMERICA,

                                                        Plaintiff - Appellee,

                          versus

RICARDO RENDON,

                                                        Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(March 22, 2012)

Before BARKETT and HULL, Circuit Judges, and HINKLE,* District Judge.

BARKETT, Circuit Judge:

        Ricardo Rendon appeals his conviction, entered upon a conditional guilty

_____

        * Honorable Robert L. Hinkle, United States District Judge for the Northern District of
Florida, sitting by designation.

plea, for one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Specifically, he challenges the district court's denial of his motion to suppress evidence that was seized during the warrantless search of his tractor-trailer by several state law enforcement officers after a drug detecting canine alerted to the presence of illegal drugs. Rendon argues that the officers lacked reasonable suspicion to detain him following the conclusion of his commercial vehicle inspection, and therefore, the officers' use of a drug detecting canine and non-consent, warrantless search of his tractor-trailer violated his Fourth Amendment rights. Alternatively, he argues that even if his continued detention was not unlawful, the district court erred in concluding that the use of the canine, which alerted officers to the cocaine in his tractor-trailer, was not tainted by officers' prior unlawful search of his tractor-trailer. We affirm.

## I. Background

While driving his tractor-trailer on I-65 in Montgomery County, Alabama, Rendon was stopped by an Alabama state trooper, Henry Cox, for purposes of conducting a commercial vehicle inspection. Cox testified that generally he conducted two commercial truck inspections during his shift and that Rendon's was the second one of that particular day. As part of the inspection, Rendon provided Cox with his driver's license, vehicle registration, proof of liability

2

insurance, and log book. He explained that he was transporting onions that had been loaded two days earlier, in Pharr, Texas. While Cox was preparing the inspection report, he asked Rendon several questions about the bill of lading for the load, the number of pallets in the load, its destination, his various stops in southern Texas, including those in Edinburgh, Pharr, and Ganada, and other questions pertaining to the load and his journey transporting it.

Cox then returned Rendon's driver's license and gave him a copy of the report indicating several violations. He then told Rendon that he was free to go, but said he had some additional questions and asked about the presence of illegal drugs in his tractor-trailer and sought Rendon's permission to search his trailer, which Rendon refused. Cox then told Rendon that although he had a right to say "no", if he refused, Cox would call in a drug sniffing canine and Rendon thereupon signed the search consent form.

Cox nonetheless called Officer Charles Anderson to bring his canine partner, Luca, to conduct the canine sniff. Prior to Luca's arrival, another state trooper, Chris Faulk, arrived at the scene. Cox and Faulk walked around the trailer inspecting it from the outside and then also entered the trailer. During the cursory search of the interior nothing was found, but, while observing the exterior of the trailer, the officers noticed new bolts on the refrigeration unit which

protruded outside of the trailer. When Anderson arrived, he, too walked around the interior of the trailer and then led Luca around the outside of the trailer. When Luca reached the outside of the refrigeration unit, he alerted. Packages, which were eventually determined to be cocaine, were found in the refrigeration unit.

Rendon sought the suppression of the cocaine and other evidence seized during the officers' search on the basis that his continued detention by Cox was unlawful and that the officers lacked probable cause to conduct the search of the interior of his trailer. After an evidentiary hearing, the district court denied the motion and Rendon eventually entered a conditional plea of guilty, preserving his right to appeal the evidentiary ruling.

## II. Discussion

Rendon does not challenge the legality of Cox's initial stop to conduct the commercial vehicle inspection and agrees that he was lawfully detained by Cox for that purpose up until the time that Cox advised him that he was free to go and had returned Rendon's identification documents.[1] However, when Cox proceeded to ask Rendon questions about the presence of illegal drugs in his trailer, both parties agree that Rendon was subject to an investigatory detention for purposes of

---

[1] Alabama law provides for the administrative inspection of commercial vehicles without the necessity of obtaining a warrant. See Ala. Code § 32-9A-3.

4

the Fourth Amendment. What the parties dispute is: (1) whether Rendon's continuing detention by Cox from this point forward was lawful; (2) whether the entry and search of the trailer by Cox, Faulk and Anderson was unlawful and, if so, (3) whether the alert by Luca to the illegal drugs was tainted by the unlawful entry and search.

A. Reasonable Suspicion to Detain Rendon

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002). A police officer may stop, detain and briefly question a citizen if the officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1964). A court must look at the "'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." Arvizu, 534 U.S. at 273.

At the hearing on Rendon's motion to suppress, Cox testified to several pieces of information gathered during the commercial vehicle inspection which he asserted supported his reasonable suspicion that Rendon was engaged in illegal activity. Looking at the totality of the circumstances, we find there was

sufficient information to conclude that Cox had a "particularized and objective basis" for suspecting legal wrongdoing.

Although we agree with Rendon that his presence in areas alleged to be sources of drug trafficking and his nervous demeanor are not sufficient, either separately or together, to raise an objectively reasonable suspicion that warrants further detention, see United States v. Perkins, 348 F.3d 965, 971 (11th Cir. 2003); United States v. Ballard, 573 F.2d 913, 916 (5th Cir. 1978),[2] there were sufficient additional reasons that Cox identified that, when considered in their totality, adequately give rise to reasonable suspicion. Those facts include: (1) Rendon's lack of knowledge of the number of pallets in his load even though most owner-operators know this information; (2) Rendon's lack of knowledge of the location of his final delivery; (3) Rendon's inability to explain the inconsistency in his statements about where he loaded the onions. He originally stated he did so in Pharr, Texas as his log books indicated, but later when asked about the reason for the amount of down time in Ganado, Texas, he responded that it took a long time to load the onions; (4) despite having been off duty for an entire day and a half in

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

Edinburg, Texas, prior to loading the onions in Pharr, Texas, and then driving only four hours, Rendon claims to have stopped for ten hours of rest, even though he could have continued driving for an additional four hours; (5) Cox's experiential knowledge that most owner-operators drive for as many hours as possible once they have loaded their trucks because that is how they make money; (6) Rendon's numerous apparently unexplained stops, even prior to loading the onions, in areas in south Texas known for drug trafficking.[3]

Accordingly, in light of the totality of the specific circumstances in this case, we conclude that Cox's continued detention of Rendon following the conclusion of the commercial vehicle inspection was lawful for purposes of the Fourth Amendment.

B. Probable Cause to Search the Tractor-Trailer

Alternatively, Rendon argues that, even if Cox had reasonable suspicion to detain him, his consent to search was coerced and the initial entry into and search of his tractor-trailer by Cox and Faulk and then by Anderson was illegal. We agree with the magistrate judge's conclusion that the interior search of the

---

[3] Rendon argues that we should not credit any of these facts because Cox's testimony is not credible because of allegations of misconduct unrelated to this case. The record contains no evidence of any connection between Cox's alleged misconduct and credibility issues and we see no reversible error in the magistrate's credibility determination.

tractor-trailer by the officers was unlawful because, as the government concedes, Rendon's consent was coerced and not voluntarily given.

C. Probable Cause to Search Based on the Canine Alert

Finally, we turn to the question of whether the unlawful search tainted the canine alert. The Supreme Court has held that the use of a canine to sniff the exterior of a vehicle for purposes of drug detection does not implicate the Fourth Amendment if it is conducted during the course of a lawful traffic stop. Illinois v. Caballes, 543 U.S. 405, 409 (2005). Moreover, our circuit has held that the alert of a drug-trained canine to the presence of drugs in a vehicle gives rise to probable cause to search that vehicle. United States v. Tamari, 454 F.3d 1259, 1265 (11th Cir. 2006). Rendon argues that, in this case, the canine sniff which alerted the officers to the presence of illegal drugs was tainted by the officers' prior unlawful detention and searches which occurred during the 20 minutes between the detention and the canine alert.[4]

Our circuit has stated that "[t]he exclusionary rule serves to deter police misconduct by preventing the introduction of evidence obtained through police

_____

[4] The initial stop in this case occurred at 4:07 pm and the parties agree that the lawful detention for the routine vehicle inspection lasted until 4:34 pm. Luca arrived at 4:52 pm and alerted to the drugs shortly thereafter.

8

illegality." United States v. Virden, 488 F.3d 1317, 1322 (11th Cir. 2007) (citing

Nix v. Williams, 467 U.S. 431, 442–43 (1984)). In explaining whether police

illegality will support the suppression of evidence, the Supreme Court has stated

that the appropriate question to ask is "whether, granting establishment of the

primary illegality, the evidence to which instant objection is made has been come

at by exploitation of that illegality or instead by means sufficiently distinguishable

to be purged of the primary taint." Wong Sun v. United States, 371 U.S. 471, 488

(1963). We have identified three circumstances in which the evidence can be said

to have been obtained by means "sufficiently distinguishable" from the initial

illegality such that suppression is not necessary.

> First, the challenged evidence will be admissible under the
> "inevitable discovery" doctrine if it inevitably or ultimately would
> have been discovered by lawful means without reference to the police
> misconduct. Second, under the "independent source" doctrine, the
> challenged evidence will be admissible if it derived from a lawful
> source independent of the illegal conduct. Third, the challenged
> evidence will be admissible under the "attenuation" doctrine if the
> causal connection between the constitutional violation and the
> discovery of the evidence has become so attenuated as to dissipate the
> taint.

United States v. Terzado-Madruga, 897 F.2d 1099, 1113 (11th Cir. 1990) (internal

citations omitted).

Here, we have held that the detention by Cox was not illegal as it was

9

supported by reasonable suspicion. Thus, there is no taint attributable to Cox's continued detention. With reference to the illegal entry into the trailer by Cox, Faulk and Anderson, we see no basis to conclude that Luca's search was tainted. First, nothing was uncovered during any of the interior inspections. The evidence that Rendon is seeking to have suppressed was not discovered by any of the three officers during their illegal searches of his tractor-trailer and we can find no connection between the interior searches and the ultimate alert by Luca. Rendon argues that the officers noticed new bolts on the refrigeration unit while they were inside the trailer. However, the evidence reflects that the refrigeration unit protruded on the outside of the trailer and it was during their exterior observation of the trailer that they noticed the new bolts. Anderson's deployment of Luca around the exterior of the tractor-trailer was conducted in a routine manner and Luca alerted to the exterior portion of the refrigeration unit.

Accordingly, because the ongoing traffic stop was lawful, and the use of a canine to perform an exterior sniff for drugs during that traffic stop was not tainted, the search for drugs in the location of the alert was permissible. See Caballes, 543 U.S. at 409. It was not error to admit this evidence under either the "inevitable discovery" or "independent source" doctrine.

**AFFIRMED.**

10