[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12354
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cr-00312-VMC-AEP-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY R. REEVES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 18, 2015)

Before MARCUS, WILLIAM PRYOR, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Anthony Reeves appeals the district court's denial of his motion to suppress evidence of tax fraud found in a backpack during a warrantless search of his vehicle for narcotics. The district court concluded that the officer lawfully searched and seized the contents of the backpack under the "plain-view" doctrine because it was immediately apparent that the contents of the backpack were evidence of fraud. After the denial of his motion to suppress, Reeves waived his right to a jury trial and was found guilty by the court, based on stipulated facts, of multiple counts of wire fraud, theft of government property, and aggravated identity theft. The sole issue in this appeal is whether the incriminating nature of the objects within the backpack was immediately apparent to the officer conducting the search. We conclude that it was and therefore affirm.

## I.

The relevant factual background is undisputed. Reeves was lawfully stopped by Florida Highway Patrol Trooper Michael Scott for committing various traffic infractions. During the stop, Scott deployed his canine partner, who alerted to the presence of narcotics near the driver's front door. Scott then began searching the vehicle. In the passenger compartment, he found marijuana residue and burnt marijuana seeds. In the trunk, Scott found the backpack at issue.

Scott began searching the backpack for evidence of narcotics. In the backpack, according to the magistrate judge's report and recommendation on the motion to suppress, which the district court adopted,

> Trooper Scott found a laptop computer, a notebook, a plastic bag containing approximately thirty credit cards, and medical records. (See Hearing Exs. 2, 5.) The notebook contained ledgers listing various names and their corresponding social security numbers and dates of birth. (See Hearing Exs. 3, 4.) Based on this evidence, Trooper Scott Mirandized Defendant and informed Defendant that he suspected Defendant was involved in some type of fraud. During this initial interview, Trooper Scott asked Defendant whether he was responsible for the backpack, and Defendant responded in the affirmative. Trooper Scott then conducted a more thorough search of the backpack, looking through the pages of the notebook and the compartments of the laptop computer for both narcotics and evidence of fraud.

After reviewing the medical records found in the backpack, the Florida Highway Patrol contacted the Department of Veteran's Affairs, which sent an agent to the scene to review the medical records and interview Reeves. The police eventually allowed Reeves to leave the scene but seized the items in the backpack.

Reeves was later indicted on twenty-four counts of various offenses, including wire fraud, in violation of 18 U.S.C. § 1343; theft of government property, in violation of 18 U.S.C. § 641; and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). He moved to suppress evidence of the warrantless search of the backpack, arguing that the incriminating nature of the items was not

3

readily apparent, such that Scott did not have probable cause to search the backpack further or to seize the contents.[1]    In support, Reeves relied on the Supreme Court's decision in *Arizona v. Hicks*, 480 U.S. 321, 107 S. Ct. 1149 (1987), for the proposition that the officer was not authorized as part of his search for drugs to manipulate the items in the backpack.

At the evidentiary hearing on the motion to suppress, Scott testified that he was familiar with the type of instruments required to commit what he referred to as "TurboTax fraud."  Specifically, Scott described what he called a "starter kit" or a "bundle" for such fraud, which includes a list of names, social security numbers, and dates of birth; a computer; and a means by which to acquire the tax refund, such as credit cards.  Upon finding similar items in Reeves's backpack during his initial search for narcotics, Scott testified, he suspected that Reeves was involved in some type of fraud or identity theft.  Scott further testified that his suspicions of fraud would have been aroused had he only discovered the laptop computer in conjunction with the copious number of credit cards.

The magistrate judge recommended denying the motion to suppress.  First, the magistrate judge found, Scott was permitted to manipulate the items of the backpack as part of his search for narcotics, for which there was probable cause. As part of this search, the magistrate judge stated, Scott could have looked through

---

[1]  Reeves originally presented other bases for suppression but later expressly waived all other issues before the hearing on his motion to suppress.

the pages of the notebook and medical records in order to search for hidden narcotics and thereby observed the writing on the pages in plain view during that search. According to the judge, even a "cursory view" of the pages was sufficient to reveal their incriminating nature. Second, the judge determined, the grouping of the items in the backpack alone, without reference to their contents, combined with Scott's prior knowledge of TurboTax fraud was arguably sufficient to establish probable cause of fraud.

The district court overruled Reeves's objections and adopted the magistrate judge's report and recommendation. Based on stipulated facts, the district court at a bench trial found Reeves guilty of the various tax-fraud and identity-theft offenses. Reeves was sentenced to a total term of 87 months of imprisonment. This appeal followed.

## II.

In an appeal from the denial of a motion to suppress, we review the district court's factual findings for clear error and its application of the law to those facts *de novo*. *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010). We construe all facts in the light most favorable to the party prevailing below—here, the government. *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000).

5

**III.**

Reeves argues that the plain-view doctrine does not support the search and seizure of the backpack's contents.  He contends that, under *Hicks*, Trooper Scott exceeded the permissible scope of his search of the backpack for drugs by moving and manipulating the items in the backpack and then conducting a more thorough second search of the backpack.  Reeves also asserts that Scott had only reasonable suspicion, not probable cause, to believe that the backpack contained evidence of fraud based on the items that were in plain view.

The plain-view doctrine permits the warrantless seizure of an object where an officer is lawfully located in a place from which the object can be plainly viewed, the officer has a lawful right to access the object, and the incriminating character of the object is "immediately apparent."  *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006); *see Horton v. California*, 496 U.S. 128, 136-37, 110 S. Ct. 2301, 2308 (1990).  The plain-view doctrine applies, for example, when, during the course of a lawful search for certain objects, the police come across other items of incriminating character.  *Smith*, 459 F.3d at 1290.  Where an object may lawfully be seized under the plain-view doctrine, it also may validly be searched.  *Hicks*, 480 U.S. at 326, 107 S. Ct. at 1153.  For an item's incriminating character to be "immediately apparent," police must have probable cause to believe

the object in plain view is contraband or evidence of a crime.  *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S. Ct. 2130, 2137 (1993).

Probable cause exists when, based on the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (*en banc*) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). Although probable cause is ultimately a legal determination reviewed *de novo*, *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663 (1996), it is also a common-sense assessment based on "the factual and practical considerations of everyday life," *Smith*, 459 F.3d at 1291 (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310 (1949)).  Therefore, a police officer may draw inferences based on his own training and experience in deciding whether probable cause exists, and we give "due weight" to the district court's finding that the officer was credible and the inference was reasonable.  *Ornelas*, 517 U.S. at 699-700, 116 S. Ct. at 1163; *see Smith*, 549 F.3d at 1291.

Reeves primarily relies on the Supreme Court's decision in *Hicks*.  In *Hicks*, the police had entered the defendant's apartment to investigate a bullet fired through the defendant's floor that had injured a man in the apartment below.  480 U.S. at 323, 107 S. Ct. at 1151-52.  One of the officers noticed two sets of expensive stereo equipment, otherwise out of place in the "squalid" and "ill-

7

appointed" apartment, leading the officer to suspect that they were stolen. *Id.* at 323, 107 S. Ct. at 1152. The officer then moved a turntable to write down its serial number, which subsequently revealed that the item was stolen. *Id.*

The Court held that the officer's "moving of the equipment" constituted a search independent from the search that was the basis for entry into the apartment. *Id.* at 324-25, 107 S. Ct. at 1152. The Court explained that merely looking at a suspicious object in plain view during a lawful search would not constitute an independent search. *Id.* at 325, 107 S. Ct. at 1152. "But taking action, unrelated to the objectives of the authorized intrusion, which expose[s] to view concealed" information, creates a new invasion of the defendant's privacy that must be independently justified. *Id.* Thus, the search of the turntable would have been authorized if the officer had probable cause to believe that the turntable was stolen, but because the State had conceded the absence of probable cause, the Court held that the search was not authorized under the plain-view doctrine. *Id.* at 326-29, 107 S. Ct. at 1153-55.

Here, we agree with the magistrate judge that Reeves's reliance on *Hicks* is unavailing. Reeves's general contention that Scott had no basis to move, manipulate, and search the contents of the backpack is meritless. Because Scott had probable cause to search the car for narcotics based on the canine alert, as Reeves concedes, *United States v. Tamari*, 454 F.3d 1259, 1265 (11th Cir. 2006)

8

("We have long recognized that probable cause arises when a drug-trained canine alerts to drugs." (internal quotation marks omitted)), he also was permitted to "search all parts of the vehicle, and any containers therein, where the object of the search might be found," *United States v. Baldwin*, 774 F.3d 711, 720 (11th Cir. 2014). Reeves does not contest that Scott lawfully accessed the trunk and the backpack. Thus, Scott was permitted to search any part of the backpack in which drugs may be found, which necessarily involves some manipulation and examination of the objects in the backpack in order to complete the search. *See United States v. Ross*, 456 U.S. 798, 820-21, 102 S. Ct. 2157, 2170-71 (1982) ("A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.").

Reeves's more specific contention appears to be that Scott was not permitted to open the notebook or to flip through the pages of the medical records as part of his search for narcotics.[2] But Scott testified, and the magistrate judge found credible, that he did an "initial look" through the notebook to determine if there were any drugs hidden within it. And the magistrate judge found, based on Scott's testimony, that through his training and experience Scott was aware that

---

[2] Reeves's argument on appeal is not developed with specificity. Rather, his contentions refer only generally to the "manipulation" and "movement" of the "items" or "contents" of the backpack, not to specific actions. Nonetheless, we are guided by the magistrate judge's order, which states that "the true issue is whether or not Trooper Scott could manipulate the contents of Defendant's backpack, i.e. open the notebook or flip through the pages of the medical records."

9

individuals will sometimes conceal narcotics between pages or even secrete narcotics into the pages themselves. Based on his initial look, Scott was able to "obviously" see a handwritten list of names and dates of birth. The magistrate judge elaborated that the notebook also contained corresponding social security numbers. Reeves calls Scott's belief that the notebook could contain evidence of drugs "unsubstantiated," but other than this conclusory statement, he has not explained why we should not defer to the magistrate judge's findings that Scott was credible and that, based on Scott's experience, Scott reasonably believed that the notebook could contain evidence of drugs. *See Ornelas*, 517 U.S. at 699-700, 116 S. Ct. at 1163; *Smith*, 549 F.3d at 1291.

Therefore, in contrast to the search of the turntable in *Hicks*, which was unrelated to the initial authorized intrusion, we cannot say that the cursory view of the pages in the notebook fell outside of the scope of the officer's search of the backpack for drugs. *See Hicks*, 480 U.S. at 325, 107 S. Ct. at 1152. In other words, no new invasion of the defendant's privacy was committed because Scott's actions were related to the "objectives of the authorized intrusion." *See id.* And the laptop computer, approximately thirty credit cards, and a notebook with a list of names, dates of birth, and social security numbers, all in close proximity in the backpack, were sufficient to establish probable cause to believe that the backpack contained evidence of tax fraud or identity theft. *See Baldwin*, 774 F.3d at 720

10

(holding that "mail from the IRS not addressed to [the defendant] or the other passenger in the vehicle, debit cards not in their names, and currency within plain view" were sufficient to establish probable cause to search the vehicle for evidence of identity theft and tax fraud). In any case, even without knowing the contents of the notebook or the medical records, a reasonable officer with Scott's training and experience with TurboTax fraud could conclude that the backpack contained evidence of fraud based primarily on the huge number of credit cards and the laptop computer.

Finally, we reject Reeves's remaining arguments for suppression. Scott did not need prior knowledge that Reeves was involved in any kind of fraud because, as explained above, it was immediately apparent that the backpack contained evidence of fraud. Nor is it relevant that Scott did not suspect Reeves of fraud before he opened the backpack, because this is precisely the type of situation in which the plain-view doctrine applies—where, during the course of a lawful search, the officer discovers evidence of another crime that was not the object of the search. *See Smith*, 459 F.3d at 1290.

## IV.

In short, the magistrate judge properly determined that the officer found in plain view, during the course of a lawful search of Reeves's backpack, items whose incriminating character was immediately apparent. *See id.* Therefore, the

district court did not err in denying Reeves's motion to suppress, and we affirm his convictions.

**AFFIRMED.**